RECEIPT NUMBER
510037

**ORIGINAL**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

IRON WORKERS LOCAL NO. 25 PENSION FUND; EDWARDS, JIM; ELLUL, ART; GLEASON, PATRICK; HAMRIC, JAMES; ROGERS, J. MICHAEL; and WALKER, JAMES

Case No.

Hon.

Plaintiffs,

**DEMAND FOR JURY TRIAL**

-vs-

·MAGISTRATE JUDGE PEPE

WATSON WYATT & COMPANY,

Defendant.

JUDGE : Tarnow, Arthur J.
DECK : S. Division Civil Deck
DATE : 07/06/2004 @ 14:33:16
CASE NUMBER : 2:04CV72485
CMP IRONWORKERS L25 ET AL V
WATSON WYATT CO (DQH)

**SHARON ALMONRODE (P33938)**
**MICHAEL J. ASHER (P-39347)**
Sullivan, Ward, Asher & Patton, P.C.
Attorneys for Plaintiff
1000 Maccabees Center
25800 Northwestern Highway
P. O. Box 222
Southfield, MI 48037-0222
(248) 746-0700

S. DIST COURT CLERK
EAST DIST MICH.
DETROIT-PSG

'04 JUL -6 P2:39

FILED

SULLIVAN, WARD, ASHER & PATTON, P.C.

/

## COMPLAINT

**NOW COME** the Plaintiffs, by and through their attorneys, Sullivan, Ward,

Asher & Patton, P.C., and for their Complaint, state as follows:

### NATURE OF THE ACTION

1.      This is an action for negligence, willful and wanton misconduct,

professional negligence and malpractice, breach of contract, negligent supervision,

negligent and fraudulent misrepresentation, silent fraud, and fraudulent concealment

stemming from Defendant Watson Wyatt & Company's ("Watson Wyatt") errors, neglect, willful and wanton misconduct, professional negligence and malpractice, breach of contract, negligent supervision, negligent and fraudulent misrepresentation, silent fraud, and fraudulent concealment of those errors during the course of providing actuarial services to the Iron Workers Local No. 25 Pension Fund (the "Fund"), an employee pension plan benefiting thousands of iron workers in the State of Michigan.

## PARTIES

2.      The Fund is an employee pension benefit plan within the meaning of Section 3(2) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA".)  with its principal and sole place of business in the City of Novi, County of Oakland, State of Michigan.  The Fund was established under an Agreement and Declaration of Trust (the "Trust Agreement"), which requires the Fund to be administered by a Board of Trustees consisting of six members (the "Board of Trustees" or the "Trustees") who manage the Fund for the benefit of its more than 7, 000 participating active and retired iron workers and their beneficiaries.

3.      Plaintiffs J. Michael Rogers and Patrick Gleason are Chairman and Secretary, respectively, of the Board of Trustees.  Plaintiffs J. Michael Rogers and Patrick Gleason are citizens of the State of Michigan.

4.       Plaintiffs Jim Edwards; Art Ellul; James Hamric and James Walker are the remaining members of the Board of Trustees.  Plaintiffs Edwards, Ellul, Hamric and Walker are citizens of the State of Michigan.

5.      Defendant Watson Wyatt & Company is a corporation organized under the laws of Delaware with its principal place of business in the State of Maryland.  On

2

information and belief, Watson Wyatt & Company is the successor in interest to the Wyatt Company, and is sometimes known as Watson Wyatt Worldwide. Watson Wyatt & Company, the Wyatt Company and Watson Wyatt Worldwide are referred to herein, collectively as "Watson Wyatt."

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332, as complete diversity of citizenship exists among the opposing parties and the amount in controversy exceeds $75,000.

7.      Venue is proper in this district under 28 U.S.C. § 1391.

8.      This Court has personal jurisdiction over Watson Wyatt under Fed. R. Civ. P. 4(k), and Michigan Compiled Laws § 600.715  as this action arises out of (1) a contract made in this state and to be performed in this state; and (2) tortious conduct in this state. Further, Watson Wyatt has offices located in Southfield, Michigan, and is registered to do business in this state.

## FACTUAL BACKGROUND

## THE FUND

9.      The Fund is an employee pension fund that receives contributions from multiple employers (a "multi-employer pension fund"). Employees who work for any employer who contributes to the Fund may qualify to receive Fund benefits. Such multi-employer funds are typically found in industries such as construction, where workers may be employed over the course of their careers, on a project-by-project basis, by many employers, and, therefore, may not work for any single employer long enough to qualify for retirement benefits under that employer's pension plan.

3

10.    Approximately 400 employers make contributions to the Fund according to the terms of the collective bargaining agreements entered into between the employers and the Iron Workers Local #25 Union.  Contributions, as required by the applicable collective bargaining agreement, are paid by the employers to the Fund on a monthly basis.  Contributions are then invested and used to pay Fund benefits.

11.    Under the Trust Agreement, the Trustees of the Fund have full authority to determine the nature, amount and duration of benefits to be paid by the Fund.  The terms and conditions of these benefits are set forth in detail in the Iron Workers Pension Plan (the "Plan Document").  Under ERISA, the terms of the Plan Document may be amended to reduce benefits to be earned by employees in the future. However, ERISA strictly limits the power of the Trustees to reduce benefits already earned (or accrued by employees.)

## WATSON WYATT'S SERVICES TO THE FUND

12.    Beginning in approximately the early 1980's and continuing until 2003, the Trustees retained Defendant Watson Wyatt, an employee benefits and actuarial consulting firm, to provide advice, analysis and recommendations concerning the structure and costs of fund benefits, among other things.

13.    Specifically, the Trustees engaged Watson Wyatt for the purpose of procuring professional expertise and advice in evaluating the Fund's assets and liabilities, complying with statutory funding standards, and meeting certain ERISA filing requirements.

4

14.    In return for Watson Wyatt's services, the Fund paid Watson Wyatt substantial fees.

15.    Before and during the time the Trustees engaged Defendant Watson Wyatt,   Defendant Watson Wyatt held itself out as an experienced and qualified employee benefit consulting and actuarial firm well-suited to service the Fund's needs.

16.    In its oral and written representations to the Trustees, Defendant Watson Wyatt represented that the team that Watson Wyatt has dedicated to the Iron Workers is ideally equipped, by both knowledge base and communication skills, to help make this combination work for you and represented that it would work to see that the Iron Worker's benefit programs are maintained to the best advantage of both sponsors and participants and that as part of the annual valuation, it would meet with the Trustees to provide a presentation of results including a detailed explanation and the long-term implications of these results for the Plan's sponsors and participants.   In a written proposal, for example, Watson Wyatt further represented that it would provide the consulting support for long-range planning that is of the utmost importance to the Trustees" and offered top flight, proactive, coordinated consulting.

17.    That as part of the contract, Watson Wyatt represented that as part of its annual valuation and data collection, it would, inter alia, review plan provisions and evolving issues; review the data for reasonableness; assumptions and methods; review plan changes since last evaluation and plan design improvements.

18.    At the outset of and throughout the period Defendant Watson Wyatt served as the Fund's actuarial consulting firm, at the request of Watson Wyatt, the

SULLIVAN, WARD, ASHER & PATTON, P.C.

5

Trustees provided Watson Wyatt with extensive documentation concerning the Fund, including, but not limited to, the Plan provisions and participant data.

19.    To fulfill certain of its obligations to the Fund, Defendant Watson Wyatt prepared an Annual Actuarial Valuation Report (the "Valuation Report"), which it submitted to the Trustees of the Fund following each plan year.

20.    Defendant Watson Wyatt's Valuation Reports described the benefits prescribed by the Plan Document, summarized data on the Fund's participants and beneficiaries, and purported to value accurately the Fund's assets and liabilities based on reasonably prudent actuarial assumptions, methods and the Fund's experience.

21.    Prior to 2002, Watson Wyatt Trustees represented that the Fund's contributions were sufficient.

22.    In addition to preparation of the Valuation Reports, Defendant Watson Wyatt regularly attended meetings of the Trustees, where it reviewed the assumptions, methods, findings and conclusions of the Valuation Reports, and otherwise advised the Trustees concerning the financial integrity of the Fund.

23.    Defendant Watson Wyatt knew that the Valuation Reports, accompanied by its interpretations and representations of the Reports, served to inform the Trustees of the overall financial health of the Fund.

24.    Defendant Watson Wyatt also knew that the Trustees would rely, and the Trustees, in fact, did rely on Defendant Watson Wyatt and the Valuation Reports to determine whether to increase, decrease or maintain benefits or to seek adjustments in contribution rates or to make other decisions critical to the Fund.

25.     Through verbal and written communications, Defendant Watson Wyatt misrepresented the financial ability of the Fund to maintain and increase benefits and to meet its goals for financial stability when in actuality Defendant Watson Wyatt knew or should have known that the Fund was under funded.

26.     Defendant Watson Wyatt knew that the Trustees would rely, and the Trustees, in fact, did rely on Defendant Watson Wyatt's Valuation Report and other communications to determine whether to increase, decrease or maintain benefits, or to make other adjustments to maintain the financial integrity of the Fund.

27.     Prior to 2002, Watson Wyatt represented that the Fund was in good condition and capable of meeting its financial obligations.

28.     From 1995 through and including 2003, Raymond Shapiro and/or William McGee were the principal Watson Wyatt actuaries responsible for the actuarial services provided to the Fund by Defendant Watson Wyatt, although through the course of discovery others may become known.

29.     Messrs. Shapiro and McGee, and on occasion others from Defendant Watson Wyatt, personally attended Trustee meetings, completed and signed the annual actuarial valuations and provided extensive advice to the Trustees regarding issues such as benefit increases and other plan amendments.

## WATSON WYATT'S MALFEASANCE

30.     Through persistent negligent, reckless, willful and wanton disregard of its professional responsibilities to the Fund, Defendant Watson Wyatt, beginning in or about 1995 and continuing each year thereafter, failed to properly advise Plaintiffs

7

regarding the financial ability of the Fund to sustain, let alone increase, then current benefit levels and otherwise regarding the financial health of the Fund.

31.    Through persistent negligent, reckless, wanton disregard of its professional responsibilities to the Fund, Defendant Watson Wyatt, beginning in or about 1995 and continuing each year thereafter affirmatively assured the Trustees that the Fund was financially sound and advise the Trustees as to when they could increase and/or sustain then current benefit levels.

32.    The persistent negligent, reckless, willful and wanton misconduct of Defendant Watson Wyatt in providing advice to the Trustees regarding the Fund caused the Trustees to make decisions concerning whether to increase, decrease or maintain benefits or to seek adjusted contribution rates or otherwise seek alternatives to appropriately manage the fund based on erroneous, inaccurate advice.

33.    Despite its professed expertise and vaunted automated systems and review processes, Defendant Watson Wyatt failed to discover the egregious errors in its advice or, alternatively, chose to fail to so inform Plaintiffs of the errors.

34.    On or around September 2002, Defendant Watson Wyatt, in connection with its preparation of the May 1, 2002 Actuarial Valuation, for the first time, indicated that the Fund must make immediate and drastic cuts in benefits to remain financially viable.

35.    Soon thereafter, Plaintiffs retained another actuarial firm to review the findings of Defendant Watson Wyatt, and to perform its own review of the financial status of the Fund.

36.   As of a result of this independent review, it was discovered that:

   a.  the actuarial status and financial integrity of the Plan were worse than represented by Defendant Watson Wyatt,

   b.  Defendant Watson Wyatt's proposed measures were insufficient,

   c.  the financial status of the Fund had been deteriorating for several years, the same period during which Defendant Watson Wyatt recommended that the Fund could maintain and increase benefits and assured the Trustees that the Fund was in good condition.

37.   Defendant Watson Wyatt was terminated as fund actuary on-or-about- in 2003.

38.   It was further discovered that beginning with at least as early as 1995 and continuing each year thereafter Defendant Watson Wyatt had been persistently negligent and willfully, recklessly, wantonly disregarding its professional responsibilities by the following, including but not limited to:

   a.  Reporting that the Fund was in solid financial condition when, in fact, it was not;

   b.  Devising insufficient and inadequate valuations, preliminary reports, and other communications which were deficient and misleading;

   c.  Failing to disclose the financial condition of the Fund;

   d.  Failing to disclose that accrual of future benefits should be reduced on a timely basis;

   e.  Failing to disclose that contributions were insufficient to meet Fund liabilities;

   f.  Employing an erroneous standard of measure regarding the Fund's financial status and upon which the Plaintiffs relied to their detriment;

   g.  Employing erroneous actuarial assumptions, and/or methods and/or decision making criteria, which led to misstatement of Fund liabilities;

SULLIVAN, WARD, ASHER & PATTON, P.C.

h. Misrepresenting that the Plan credit balance could offset current and future liabilities;

i. Failing to advise that the discrepancy in minimum contributions and/or actual contributions threatened the financial viability of the Fund;

j. Misrepresenting and failing to inform the Trustees that the Fund had insufficient resources to pay all benefits;

k. Failing to insure that the actuarial assumptions were reasonably prudent;·

l. Failing to inform Plaintiffs regarding the funding period necessary to amortize the unfunded liability;

m. Failing to advise of a change in the method of valuation and/or funding;

n. Assuring the Trustees the Fund was in good condition when in fact the Fund was approaching insolvency;

o. Violating actuarial professional standards of conduct including, but not limited to, failing to use reasonable actuarial assumptions, failing to clearly communicate, failing to accurately advise of funding status; failing to recognize that the actuarial assumptions and/or methods and/or decision making criteria they used were not accepted actuarial practice;

p. Assuring the Trustees that the funding periods for the Fund were accurate;

q. Repeatedly assuring the Trustees that the Fund was more than adequately funded;

r. Failing to inform the Trustees of adverse cash shortfalls caused by Defendant's errors;

s. Failing to advise Plaintiffs in a competent manner on matters upon which it rendered actuarial opinions and advice;

t. Failing to exercise due diligence and reasonable care when rendering actuarial advice and opinions, whether written or oral;

u. Failing to exercise due diligence and reasonable care in advising various benefit improvements;

SULLIVAN, WARD, ASHER & PATTON, P.C.

v.  Failing to act in accordance with the professional standards of practice and rules of conduct for actuaries;

w.  Failing to keep the Trustees informed of changes in actuarial assumptions;

x.  Failing to keep the Trustees informed of the financial status of the Fund;

y.  Failing to recognize or acting in complete ignorance and/ or concealing information from Plaintiffs regarding the deteriorating status of the plan;

z.  Failing to observe due professional care in the performance of its professional services;

aa. Failing to follow appropriate professional standards when preparing various reports, including the annual valuations;

bb. Such other errors that become known through discovery as experts are still endeavoring to go through the more than ten years of calculations at issue;

cc. Otherwise failing to provide the appropriate actuarial consultation regarding the matters for which Defendant was hired in accordance with due care and the standards of a reasonably prudent actuary;

dd. Otherwise failing to provide the appropriate actuarial consultation regarding the matters for which Defendant was hired in accordance with the applicable standards for a reasonably prudent actuary in this and similar communities;

ee. Otherwise failing to act in a manner consistent with the care or skill required of an actuary.

39.    These errors, and Defendant Watson Wyatt's wanton, willful, reckless, negligent and/or fraudulent failure to either discover them or disclose them to the Trustees, caused the Trustees to rely on the cumulative effect of Defendant Watson Wyatt's erroneous, negligent, wanton, willful, reckless and/or fraudulent advice so as to cause the Fund to experience substantial damage.

11

40.    As a result of Defendant Watson Wyatt's disclosure in 2002 that the Fund was in jeopardy, the Trustees discovered that Defendant Watson Wyatt's prior representations to the Trustees regarding the financial health of the Fund, and the Fund's ability to maintain and increase benefit rates, were false.

41.    As a result of the above misconduct, the Fund incurred a substantial shortfall that threatens the viability of the Fund.

42.    As a further result, the Trustees had to undertake drastic reduction measures in order to maintain the viability of the Fund, including, but not limited to virtually eliminating the future benefit accruals for active participants.

43.    Defendant Watson Wyatt knew or should have known of the Fund's deterioration prior to 2002.

44.    During the time that Defendant Watson Wyatt knew or should have known that the Fund was deteriorating, Defendant Watson Wyatt deliberately concealed this fact from the Trustees and, in fact, presented to the Trustees a contract for services, which sought indemnification and a monetary limitation of Watson Wyatt's liability to the Fund prior to advising Plaintiffs that the Fund was deteriorating.

45.    Had the Trustees known the true facts concerning the Fund's liabilities and financial status, they would have taken such action as necessary to preserve the Fund's financial integrity.

**COUNT I**

**NEGLIGENCE**

46.    Plaintiffs incorporate by reference Paragraphs 1 through 45 as if fully set forth herein.

SULLIVAN, WARD, ASHER & PATTON, P.C.

47.    Defendant Watson Wyatt owed Plaintiffs a duty to exercise due care and skill in providing actuarial services to the Fund.

48.    Defendant Watson Wyatt breached its duty in negligently analyzing, assessing and communicating the accurate actuarial and financial status of the Fund and in providing services consistent with a reasonably prudent actuary and as otherwise set forth herein.

49.    By negligently, willfully, recklessly, willfully, wantonly and repeatedly committing gross errors and failing to exercise due care and skill in providing actuarial services to the Fund and in failing to promptly discover and disclose those errors to the Trustees, Defendant Watson Wyatt acted negligently, willfully, recklessly and wantonly.

50.    As a direct and proximate result of Defendant Watson Wyatt's negligence, willful, wanton and reckless misconduct, Plaintiffs have suffered significant damages and the total obligation for which the Fund is insufficiently financed and damaged exceeds $75,000. By reason of the foregoing, the Fund has suffered damages in the millions of dollars, the exact amount to be determined at trial.

**WHEREFORE**, Plaintiffs request judgment against Defendant Watson Wyatt for negligence and willful, reckless and wanton negligence, including:

A.    Damages in an amount to be determined at trial;

B.    Applicable interest, costs and expenses of this action, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## COUNT II

### PROFESSIONAL NEGLIGENCE/ MALPRACTICE

51.    Plaintiffs incorporate by reference Paragraphs 1 through 50 as if fully set forth herein.

52.    At all times relevant herein, Plaintiffs sought actuarial advice from Defendant Watson Wyatt, and Defendant was retained to perform actuarial services for the Fund in its professional capacity as an actuary.

53.    Defendant Watson Wyatt owed Plaintiffs a duty to exercise due care and skill in providing actuarial services to the Fund.

54.    Defendant Watson Wyatt held itself out to Plaintiffs, and otherwise represented itself, as being competent to render actuarial services to Plaintiffs.

55.    Defendant Watson Wyatt owed a duty to Plaintiffs to perform actuarial services in a manner consistent with a reasonably prudent actuary.

56.    Defendant Watson Wyatt owed a duty to Plaintiffs to provide actuarial services that complied with that of a reasonably prudent actuary under like or similar circumstances.

57.    Defendant Watson Wyatt breached its duty to Plaintiffs in failing to properly analyze, assess, and communicate the accurate actuarial and financial status of the Fund and to otherwise provide services consistent with a reasonably prudent actuary and as otherwise set forth herein.

58.    By negligently, recklessly, willfully, wantonly and repeatedly committing gross errors and breaching its duty in providing actuarial services to the Fund, and in failing to promptly discover and disclose those errors to the Trustees, Defendant

Watson Wyatt acted negligently, recklessly, willfully and wantonly and breached its duty to provide services consistent with a reasonably prudent actuary.

59.    As a direct and proximate result of Defendant Watson Wyatt's failure to provide actuarial services consistent with a reasonably prudent actuary, Plaintiffs have suffered significant damages and the total obligation for which the Fund is insufficiently financed and damaged exceeds $75,000.  By reason of the foregoing, the Fund has suffered damages in the millions of dollars, the exact amount to be determined at trial.

**WHEREFORE**, Plaintiffs request judgment against Defendant Watson Wyatt, including:

A.    Damages in an amount to be determined at trial;

B.    Applicable interest, costs and expenses of this action, including reasonable attorney's fees, and such other and further relief as the Court deems just and proper.

### COUNT III

### NEGLIGENT SUPERVISION

60.    Plaintiffs incorporate by reference Paragraphs 1 through 59 as if fully set forth herein.

61.    Defendant Watson Wyatt owed a duty to the Fund and the Trustees to supervise the Watson Wyatt employees who provided services to the Fund in order to prevent negligent actuarial acts and omissions, misleading recommendations and the like.

62.    Defendant Watson Wyatt negligently, recklessly, willfully and wantonly breached its duty to the Fund and the Trustees to supervise Watson Wyatt's employees.

SULLIVAN, WARD, ASHER & PATTON, P.C.

63.    As a direct and proximate result of Defendant Watson Wyatt's negligent, reckless, willful and wanton supervision, Plaintiffs have suffered significant damages and the total obligation for which the Fund is insufficiently financed and damaged exceeds $75,000.  By reason of the foregoing, the Fund has suffered damages in the millions of dollars, the exact amount to be determined at trial.

**WHEREFORE**, Plaintiffs request judgment against Defendant Watson Wyatt, including:

A.    Damages in an amount to be determined at trial;

B.    Applicable interest, costs and expenses of this action, including reasonable attorneys fees, and such other and further relief as the Court deems just and proper.

## COUNT IV

## BREACH OF CONTRACT

64.    Plaintiffs repeat and reallege each and every allegation of Paragraphs 1 through 63 as though fully stated herein.

65.    Defendant Watson Wyatt entered into a contractual relationship with the Trustees to serve as the Fund's actuary.  Among other things, the contract obligated Defendant Watson Wyatt to provide, accurate, reliable and quality actuarial services to the Fund and in its oral and written representations to the Trustees, Defendant Watson Wyatt represented, inter alia:

a. that Watson Wyatt was an employee benefits and actuarial consulting firm with the professional expertise to provide advice analysis and recommendations concerning the structure and costs of Fund benefits, among other things, and evaluate the Fund's assets and liabilities, comply with statutory funding standards, and meet certain ERISA filing requirements;

16

b.  that Watson Wyatt was an experienced and qualified employee benefit consulting and actuarial firm well-suited to service the Fund's needs;

c.  the team that Watson Wyatt has dedicated to the Iron Workers is ideally equipped by both knowledge base and communication skills, to help make this combination work for you;

d.  that it would work to see that the Iron Worker's benefit programs are maintained to the best advantage of both sponsors and participants;

e.  that it would meet with Trustees to provide a presentation of results including a detailed explanation and the long-term implications of these results for the Plan's sponsors and participants;

f.  that it would provide the consulting support for long-range planning that is of the utmost importance to the Trustees;

g.  that it would provide top flight, proactive, coordinated consulting; and

h.   that as part of its annual valuation and data collection it would, inter alia, review plan provisions and evolving issues; review the data for reasonableness; assumptions/methods; review plan changes since last evaluation and plan design improvements.

66.    The Trustees, acting on behalf of the Fund, performed all of their obligations under their contact with Defendant Watson Wyatt.

67.    By recklessly, wantonly, willfully and negligently repeatedly committing gross errors in providing actuarial services to the Fund and in failing to promptly discover and disclose those errors to the Trustees and by deliberately concealing those errors, and by deliberately misleading the Plaintiffs, and by such other conduct as set for otherwise herein, Defendant Watson Wyatt breached its contract with the Trustees and the Fund.

17

68.    By reason of the foregoing, Plaintiffs have suffered significant damages and the total obligation for which the Fund is insufficiently financed and damaged exceeds $75,000.  By reason of the foregoing, the Fund has suffered damages in the millions of dollars, the exact amount to be determined at trial.

**WHEREFORE**, Plaintiffs request judgment against Defendant Watson Wyatt for breach of contract, including:

A.    Damages in an amount to be determined at trial;

B.    Applicable interest, costs and expenses of this action, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

## COUNT V

## NEGLIGENT AND/OR FRAUDULENT MISREPRESENTATION

69.    Plaintiffs repeat and reallege each and every allegation of Paragraphs 1 through 68 as though fully stated herein.

70.    From at least as early as 1995 and continuing each year thereafter, Defendant Watson Wyatt made several negligent, reckless and/or fraudulent misrepresentations of material fact to Plaintiffs with the intent to deceive Plaintiffs by concealing material facts, silently or otherwise, intentionally or innocently, resulting in the concealment of material facts with the intent that Plaintiffs would rely on said representations or actions.

71.    Defendant Watson Wyatt, at various times, made negligent, reckless and/or fraudulent misrepresentations of material fact to Plaintiffs regarding the status of the Fund; the appropriate measure to determine the Fund's financial ability to fund benefit improvements and/or the necessity for contribution rate increases; that the

18

Fund had enough money to pay benefit increases; that the Fund could maintain the contribution level; and that the Fund was solvent.

72.    Defendant Watson Wyatt also made negligent, reckless and/or fraudulent misrepresentations of material fact as to the appropriateness of the underlying actuarial assumptions, and/or methods and/or decision-making criteria.

73.    From as early as 1995 to 2002, Defendant Watson Wyatt continued to make negligent, reckless and/or fraudulent misrepresentations of material fact that the plan was in good financial condition.

74.    Defendant Watson Wyatt owed Plaintiffs a duty not to make negligent, reckless and/or fraudulent misrepresentations of material fact concerning the plan.

75.    Defendant Watson Wyatt owed Plaintiffs a duty of full and honest and accurate disclosure in connection with Defendant Watson Wyatt's performance of actuarial services.

76.    Defendant Watson Wyatt knew the representations it made to Plaintiffs were false when made or such representations were made recklessly and/or negligently.

77.    Defendant Watson Wyatt intended that Plaintiffs would rely on the representations that Defendant made to Plaintiffs regarding the Fund.

78.    Plaintiffs reasonably, but detrimentally, relied on Defendant Watson Wyatt's negligent, reckless and/or fraudulent misrepresentations of material fact, and Plaintiffs ultimately incorporated these misrepresentations in their management of the Fund.

19

79.    Due to Defendant Watson Wyatt's negligent, reckless and/or fraudulent misrepresentations, the Trustees were deprived of the opportunity to manage the Fund in a sound manner consistent with their objectives.

80.    Plaintiffs have suffered significant damages as a result of their reliance on Defendant Watson Wyatt's negligent, reckless and/or fraudulent misrepresentations and the total obligation for which the Fund is insufficiently financed and damaged exceeds $75,000.    By reason of the foregoing, the Fund has suffered damages in the millions of dollars, the exact amount to be determined at trial.

**WHEREFORE**, Plaintiffs request judgment against Defendant Watson Wyatt, including:

A.    Damages in an amount to be determined at trial;

B.    Applicable interest, costs and expenses of this action, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

### COUNT VI

### SILENT FRAUD BASED ON FAILURE TO DISCLOSE FACTS

81.    Plaintiffs repeat and reallege each and every allegation of Paragraphs 1 through 80 as though fully stated herein.

82.    From as early as 1995 and continuing to 2003, Defendant Watson Wyatt fraudulently, with the intent to deceive Plaintiffs,  concealed material facts, silently or otherwise, intentionally or innocently, resulting in the concealment of material facts with the intent that Plaintiffs would rely on said representations or actions.

83.    Defendant Watson Wyatt had actual knowledge of the facts.

84.    Defendant Watson Wyatt failed to disclose the facts to cause Plaintiffs to have a false impression.

SULLIVAN, WARD, ASHER & PATTON, P.C.

85.    When Defendant Watson Wyatt failed to disclose the material facts, Defendant knew the failure would create a false impression.

86.    When Defendant failed to disclose the facts, Defendant intended that Plaintiffs rely on the resulting false impression.

87.    Defendant Watson Wyatt fraudulently failed to disclose material facts to Plaintiffs that the Fund did not have sufficient assets to maintain or increase benefits and that the Fund was not financially healthy.

88.    Defendant Watson Wyatt fraudulently failed to disclose the material facts that the underlying actuarial assumptions, and/or methods and/or decision making criteria were not appropriate and, in fact created the false impression that they were appropriate.

89.    Defendant Watson Wyatt owed Plaintiffs a duty of full and honest and accurate disclosure in connection with Defendant Watson Wyatt's performance of actuarial services.

90.    Plaintiffs reasonably, but detrimentally, relied on Defendant Watson Wyatt's fraudulent failure to disclose these material facts and the false impression this created and Defendant Watson Wyatt knew that Plaintiffs would rely on these non-disclosures and false impressions.

91.    Because of Defendant Watson Wyatt's fraudulent failure to disclose material facts, the Trustees were deprived of the opportunity to manage the Fund in a sound manner consistent with their objectives.

92.    The Fund has suffered significant damages as a result of the Trustee's reliance on Defendant Watson Wyatt's fraudulent failure to disclose material facts and

SULLIVAN, WARD, ASHER & PATTON, P.C.

the total obligation for which the Fund is insufficiently financed and damaged exceeds

$75,000.   By reason of the foregoing, the Fund has suffered damages in the millions

of dollars, the exact amount to be determined at trial.

WHEREFORE, Plaintiffs request judgment against Defendant, including:

A.    Damages in an amount to be determined at trial;

B.    Applicable interest, costs and expenses of this action, including
      reasonable attorneys' fees, and such other and further relief as the Court
      deems just and proper.

## COUNT VII

## FRAUDULENT CONCEALMENT

93.    Plaintiffs repeat and reallege each and every allegation of Paragraphs 1

through 92 as though fully stated herein.

94.    Defendant Watson Wyatt made several fraudulent misrepresentations of

material fact to Plaintiffs regarding the status of the Fund; the appropriate measure to

determine the Fund's financial ability to fund benefit improvements and/or the

necessity for contribution rate increases; and the financial strength of the Fund.

95.    During the course of the engagement of Defendant Watson Wyatt as

actuaries for the Fund, Defendant fraudulently concealed its errors; including the

impact of those errors on the status of the Fund and that the Fund would not have

sufficient money to cover all of the benefits.

96.    Defendant Watson Wyatt attempted to fraudulently induce Plaintiffs to

sign an indemnification and limitation of liability agreement when it knew or should

have known of its errors and that the Fund was experiencing a significant shortfall.

97.    Defendant Watson Wyatt owed Plaintiffs a duty of full and honest disclosure in connection with its performance of actuarial services.

98.    Plaintiffs reasonably, but detrimentally, relied on Defendant Watson Wyatt's fraudulent concealment of its errors and thereby experienced a significant shortfall in the Fund and was denied the opportunity to assess and take corrective action.

99.  But for Defendant Watson Wyatt's fraudulent concealment, the Fund would not have experienced a significant shortfall and Plaintiffs would have been in a position to consider various options in managing the Fund.

100.    But for Defendant Watson Wyatt's fraudulent concealment, Plaintiffs would have discovered Watson Wyatt's errors.

101.    As a result of Defendant Watson Wyatt's fraudulent concealment, Plaintiffs have suffered significant damages and the total obligation for which the plan is insufficiently financed and damaged exceeds $75,000.  By reason of the foregoing, the Fund has suffered damages in the millions of dollars, the exact amount to be determined at trial.

**WHEREFORE**, Plaintiffs request judgment against Defendant, including:

A.    Damages in an amount to be determined at trial;

B.    Applicable interest, costs and expenses of this action, including reasonable attorneys' fees, and such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury of all issues.

SULLIVAN, WARD,
 ASHER & PATTON, P.C.

By: _Sharon Almonrode_

MICHAEL J. ASHER (P-39347)
SHARON ALMONRODE (P-33938)
Attorneys for Plaintiff
1000 Maccabees Center
25800 Northwestern Highway
P. O. Box 222
Southfield, MI  48037-0222
(248) 746-0700

Dated:    July 2, 2004

W0355858

SULLIVAN, WARD, ASHER & PATTON, P.C.

24

72485

Tarnow/SDP

JS 44 11/99    **CIVIL COVER SHEET**  COUNTY IN WHICH THIS ACTION AROSE: __Oakland__

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**I. (a) PLAINTIFFS**

IRONWORKERS LOCAL NO. 25 PENSION FUND, et al

**(b)** County of Residence of First Listed    OAKLAND

26125

**(C)** Attorney's (Firm Name, Address, and Telephone Number)
SULLIVAN, WARD, ASHERY & PATTON
25800 Northwestern Highway, #1000
Southfield MI 48075  (248) 746-0700

**DEFENDANTS**  **04-72485**

WATSON WYATT AND COMPANY

ARTHUR J. TARNOW

County of Residence of First Listed    MONTGOMERY

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

MAGISTRATE JUDGE PEPE

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item 111)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLA | DEF | | PLA | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** ☐ 310 Airplane ☐ 315 Airplane Product Liability | **PERSONAL INJURY** ☐ 362 Personal Injury-Med. Malpractice ☐ 365 Personal Injury-Product Liability | ☐ 610 Agriculture ☐ 620 Other Food & Drug ☐ 625 Drug Related Seizure of Property 21: 881 ☐ 630 Liquor Laws | ☐ 422 Appeal 28 USC 158 ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment ☐ 410 Antitrust ☐ 430 Banks and Banking ☐ 450 Commerce/ICC ☐ 460 Deportation |
| ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment and Enforcement of Judgment | ☐ 320 Assault Libel And Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck ☐ 650 Airline Regs. ☐ 660 Occupational Safety/Health | **PROPERTY RIGHTS** ☐ 820 Copyrights ☐ 830 Patent ☐ 840 Trademark | ☐ 470 Racketeer Influenced & Corrupt Organizations ☐ 810 Selective Service ☐ 850 Securities/Commodities/ Exchange |
| ☐ 151 Medicare Act ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholders' Suits ☐ 190 Other Contract ☐ 195 Contract Product Liability | ☐ 330 Federal Employers' Liability ☐ 340 Marine ☐ 345 Marine Product Liability ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability ☒ 360 Other Personal Injury | **PERSONAL PROPERTY** ☐ 370 Other Fraud ☐ 371 Truth in Lending ☐ 380 Other Personal Property Damage ☐ 385 Property Damage Product Liability | ☐ 690 Other **LABOR** ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Railway Labor Act | **SOCIAL SECURITY** ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 ☐ 891 Agricultural Acts ☐ 892 Economic Stabilization Act ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** ☐ 210 Land Condemnation ☐ 220 Foreclosure ☐ 230 Rent Lease & Ejectment ☐ 240 Torts to Land ☐ 245 Tort Product Liability ☐ 290 All Other Real Property | **CIVIL RIGHTS** ☐ 441 Voting ☐ 442 Employment ☐ 443 Housing/ Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights | **PRISONER PETITIONS** ☐ 510 Motions to Vacate Sentence Habeas Corpus: ☐ 530 General ☐ 535 Death Penalty ☐ 540 Mandamus & Other ☐ 550 Civil Rights ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** ☐ 870 Taxes (U.S. Plaintiff or Defendant) ☐ 871 IRS-Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice ☐ 950 Constitutionality of State Statutes ☐ 890 Other Statutory Actions |

3 GS

POSSIBLE COMPANION CASE

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multi-district Litigation
☐ 7 Appeal to District Judge from Magistrate

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 USC 1332

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S)** (See instructions): IF ANY
JUDGE _____    DOCKET NUMBER _____

DATE  7-6-04

SIGNATURE OF ATTORNEY OF RECORD  _Sharon Almonrode_

# PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?

                                                                  [X] Yes-Dismissed without prejudice

                                                                  [ ] No

If yes, give the following information:

Court: Federal District Court

Case No.: 04-40109

Judge: Paul V. Gadola


2.        Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)

                                                [ ] Yes

                                                [X] No

If yes, give the following information:

Court:

Case No.:

Judge:


Notes :