UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IRON WORKERS' LOCAL 25 PENSION FUND, JIM EDWARDS, ART ELLUL, PATRICK GLEASON, JAMES HAMRIC, J. MICHAEL ROGERS, and JAMES WALKER,

    Plaintiffs,

v.

WATSON WYATT & CO.,

    Defendant.
_____/

Case No. 04-cv-40243
(consolidated with No. 07-cv-12368)

HONORABLE STEPHEN J. MURPHY, III

**ORDER GRANTING PLAINTIFFS' MOTION
FOR AN ORDER TO SHOW CAUSE WHY THE
IRON WORKERS LOCAL 25 PENSION FUND SHOULD
<u>NOT BE HELD IN CONTEMPT OF COURT</u> (docket no. 208)**

### INTRODUCTION

This dispute arises from a claim for actuarial malpractice that the Iron Worker's Local 25 Pension Fund ("the Fund") and its trustees originally brought against Watson Wyatt & Co., an accounting firm that had performed services for the Fund. According to the initial complaint filed in that matter, the Fund is an employee pension benefit plan within the meaning of the federal Employee Retirement Income Security Act of 1974 ("ERISA"), *codified at* 29 U.S.C. § 1001. The Fund's original claim is relevant to the instant dispute only because it resulted in a judgment of over 100 million dollars being entered in favor of the Fund. Accordingly, the Fund is no longer a party to this case, and was not a party at the time the instant discovery dispute arose.

The litigation continues, however, in the form of disputes over the nearly $36 million contingency fee collected in the original matter by the law firm Sullivan, Ward, Asher and

Patton, PC ("Sullivan, Ward"). Specifically, George Young, the movant here and one of the trustees of the Fund, is claiming that by agreeing to this fee the other trustees breached their fiduciary duties to the Fund, and that by collecting it Sullivan, Ward engaged in legal malpractice. Young's claim has been consolidated with the original malpractice proceeding.

The instant motion relates to Young's attempts to subpoena certain Fund documents that he claims are relevant to the reasonableness of the fee paid to Sullivan, Ward. Because the instant dispute concerns only the procedural propriety of enforcing this subpoena, the precise nature of the requested documents is not relevant here.

Although Young is a trustee of the Fund, the other trustees have apparently taken the position that access to these documents – even by the trustees themselves – requires the approval of a majority of the trustees.[1]  As most of the trustees are defendants in this action, such approval for Young to review the documents has not been forthcoming. In response, Young issued a subpoena, purportedly to the Fund itself, requesting the documents. The subpoena is what Young seeks to enforce in the current motion.

---

[1] Young has also protested that the other trustees' position is incorrect, and that as a trustee himself he has a right to access the documents without having to file discovery requests. In the instant motion, however, Young seeks only to have the Fund held in contempt for failing to respond to a subpoena issued in this litigation. Thus, the question of his right to independent access to the documents is not properly before the Court.

2

**FACTS**

Young's counsel sent this subpoena by registered mail to the administrator of the Fund, a Mr. Dennis Kramer, on August 28, 2008. The subpoena ordered that the documents be produced at 9 AM on October 2, 2008. Although Federal Rule of Civil Procedure 45 requires that notice of such a subpoena be sent to all parties before the subpoena is served, and although notice was duly sent to the attorneys representing the rest of the parties, Young's counsel failed (inadvertently, he says) to send such notice to counsel for the other trustees. The trustees' lawyer learned of the subpoena, however, from one of the other attorneys in the case, and on September 11, 2008 – the 14th day after the subpoena issued – counsel for the trustees faxed to Young's counsel a letter purporting to object to the subpoena on behalf of the Fund. The objections were that:

(A) because a majority of its trustees are parties to this litigation, the Fund is also a party and should have been served with a Rule 34 request for production of documents instead of a rule 45 non-part subpoena;

(B) the subpoenaed documents were largely duplicative of ones Young had already requested from the trustees themselves;

(C) finding all the subpoenaed documents would be unduly burdensome;

(D) some of the subpoenaed documents contain confidential or privileged information;

(E) the subpoena was not personally served; and

(F) the trustees were not notified of the subpoena.

Young's counsel replied by fax the next day, September 12, unequivocally apologizing for his failure to notify the trustees' attorneys of the subpoena, and asserting that it was a purely clerical error. There is no record evidence of what happened over the next week or

two; apparently verbal negotiations about how to compromise the dispute took place, but ultimately no agreement was reached. The trustees did not, and to this date have not, moved to quash the subpoena, nor did Young move for its enforcement over the purported objections.

Instead, on Tuesday, September 30, 2008 Young's counsel sent a facsimile message to the trustees' counsel, stating that the subpoena would be enforced as scheduled, on Thursday of that same week. The trustees' counsel asserts that he was very busy over the next day or so, and did not read this fax until after 9 AM on October 2, 2008. Apparently, then, no representative of the trustees appeared at the time and place designated by the subpoena for the production. When counsel for Young arrived to collect the documents, Mr. Kramer (the Fund administrator) refused to produce them, relying on the objections noticed by the trustees, purportedly on behalf of the Fund.

The present motion followed. Oral argument was requested and held before the Court on February 17, 2009.

### PROCEDURAL POSTURE AND GOVERNING LAW

As a result of these events, Young now seeks an order of contempt against the Fund. Federal Rule of Civil Procedure 45(e) provides that "[t]he issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey [a] subpoena." Although Rule 45 subpoenas for the production of documents, like all Rule 45 subpoenas, are drawn up by the attorneys for the subpoenaing party, as a matter of law they are issued from the court in which the production is to take place. Fed. R. Civ. P. 45(2)(c). Thus, disobedience is also punishable under 18 U.S.C. § 401, which provides that "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as – . . . (3)

4

Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." The Court thus need not rely on its inherent power to sanction those who engage in misconduct relating to proceedings before it. *See generally Chambers v. NASCO, Inc.,* 501 U.S. 32 (1991).

The Fund has not put in a formal appearance before this Court to defend the motion. Instead, the trustees continue to assert their right to act on behalf of the Fund, and so the motion has been defended by the trustees' counsel. In the Fund's defense, the trustees assert the validity of the objections they filed on its behalf, pointing out that after objections to a subpoena are properly filed, a court order is required for its enforcement. The trustees also reprise three of the arguments initially raised in their objections on behalf of the Fund, namely, that the subpoena is unenforceable (1) because the Fund is technically a party to the case, (2) because it was not properly served, and (3) because the trustees' counsel were not given proper notice of it. Anticipating that the trustees would seek to defend the motion on behalf of the Fund, Young argues that this is improper, and additionally requests that this Court issue an order prohibiting the trustees' counsel from acting further to represent the Fund.

## ANALYSIS

Under Federal Rule of Civil Procedure 45(c)(2)(B),

> A person commanded to produce documents . . . may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials . . . . The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
>
> > (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

>    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

The present motion presents, in the Court's view, two central questions. The first is whether the September 11, 2008 objections should be construed as being served by the trustees, by the Fund, or by both of them. The second question is which of those parties had standing to file the initial objections, and which of them is now permitted to argue their effectiveness in defense of a contempt motion against the Fund. Because the briefing on this motion has presented the two as inextricably intertwined, the Court will consider them together.

I. The Trustees' Standing to Object On Behalf of the Fund

The primary defense to enforcement of the subpoena proffered by the trustees on behalf of the Fund is that the Fund itself objected to the subpoena through the September 11 letter from the trustees' counsel. Young does not dispute that these objections were timely under Rule 45(c)(2)(B), that they were served properly, and that he has not moved to enforce the subpoena in despite of them. He does, however, contend that only the Fund itself has standing to file objections to the subpoena, and that its trustees and their counsel cannot act in its place in this matter. Thus, he claims that the objections noticed by the trustees are ineffective, because the subpoena was not directed to them.

In response, the trustees appear to argue that because the Trustees are responsible for the administration of the Fund, they have standing to object on its behalf. The Court agrees that the Fund acts through the majority vote of its trustees. Federal law, however, is -- and has long been crystal clear -- that ERISA plans are legal entities independent of their trustees or other governors, and that such plans have standing to sue and be sued on their own behalves. 29 U.S.C. § 1132(d). Indeed, ERISA even explicitly states that

6

"[s]ervice of summons, subpena [sic],or other legal process of a court upon a trustee or an administrator of an employee benefit plan in his capacity as such shall constitute service upon the employee benefit plan." *Id.* Since the Fund is empowered to sue and be sued on its own behalf, and to accept service of subpoenas, the obvious conclusion is that it may and indeed must respond to those subpoenas on its own behalf, and not through its trustees' counsel. There can be no dispute that the trustees, through a majority vote in their official capacities, have authority to retain counsel for the Fund and to issue directions to that counsel on behalf of the Fund.

However, the foregoing certainly does not give the trustees, when sued for a breach of their fiduciary duties to the Fund, the ability to have their personal lawyers act on behalf of the Fund itself when it is subpoenaed as a non-party. Yet in their briefs the trustees appear to claim precisely this type of authority.[2] They offer no authority whatsoever for this proposition, nor do they make any argument that would support reading the word "subpena" in § 1132(d) not to include Rule 45 subpoenas. They do mention that this subpoena was directed to the Iron Workers' Local 25 Pension *Fund*, which they claim is a separate entity from the Iron Workers' Local 25 Pension *Plan*. But this is an insignificant semantic quibble. ERISA confers the ability to sue, be sued, and accept service of subpoenas on "employee benefit plan[s]," *id.*, which it defines as a plan "which is both an

---

[2] Indeed, it appears that this legal position -- that there is no possible distinction between the Fund and its trustees, even when the latter are sued for a breach of duty to the former -- has been the foundation of the trustees' entire conduct of the litigation connected to this subpoena. This understanding is reinforced by another of the trustees' arguments: that, because a majority of the trustees are parties to this lawsuit, the Fund itself should also be considered a party. The trustees apparently advance this contention in the mistaken belief that Rule 45 subpoenas are ineffective when directed against a co-party to the lawsuit in which they are issued. But nothing in Rule 45 prohibits subpoenas from issuing against parties to a lawsuit, and the comments to the Rule specifically permit it. Fed. R. Civ. P. Cmt. 45-1. As there undoubtedly *is* a legal distinction between the Fund and its trustees, the Court must reject this argument at its first step.

7

employee welfare benefit plan and an employee pension benefit plan." *Id.* § 1002(3). It further defines "employee welfare benefit plan" and "employee pension benefit plan" to mean "any plan, fund, or program" that meet its respective criteria. The trustees offer no argument at all that the Iron Workers' Local 25 Pension Fund does not meet this definition, beyond noting that it is styled a "fund" and not a "plan." Indeed, their own complaint filed in this case asserts that the Fund is an ERISA plan. In light of the statutory language, this is clearly correct. To the extent that the trustees suggest that the Fund is not an ERISA plan, their argument is entirely lacking in merit.

In sum, the trustees' arguments in support of their ability to personally object to a subpoena served on the Fund suffer on every level from a lack of legal support. The Court will not adopt them, and is left mystified as to why the trustees chose to object and press these arguments rather than to simply (or additionally) move to quash the subpoena.

II.  The Fund's Standing to Object On Its Own Behalf

While the law that governs this motion is thus clear, in the view of the Court, the facts as to what the trustees and the Fund actually did in response to the subpoena remain hazy. Specifically, it is not clear from the record precisely how the trustees authorized their counsel to act on behalf of the Fund. As has been noted, they had no authority to do so individually, but they could have authorized legal representation of the Fund by a majority vote taken in their official capacities. Since the subpoena was served on the Fund, it is clear that the Fund itself would have standing to object to it. Thus, if the trustees have caused the Fund to take official action retaining or instructing their counsel to represent it, then the objections submitted "on behalf of the Fund" would really have been submitted *by* the Fund, and would prevent enforcement of the subpoena in the absence of a court order.

8

Young objects that if the trustees hired their own lawyers to act on behalf of the Fund in a suit for breach of fiduciary duty like this one, the attorneys would face a horrible conflict of interest and be in a very precarious ethical situation. Accordingly, they seek an order prohibiting the trustees' counsel from taking further action on behalf of the Fund. In light of its rejection of the trustees' arguments that there is no distinction between themselves and the Fund, the Court agrees with Young that any dual representation of the trustees and the Fund in this matter would raise ethical questions of a very serious nature. Young's objective in this lawsuit is to require the other trustees to repay money to the Fund. Thus, the potential conflict between the trustees and the Fund is obvious; indeed, it is currently the focal point of what remains of the suit. Accordingly, joint representation of the Fund and the trustees is at least *prima facie* improper, and the Court will grant the order that Young requests.

The Court's action, however, does not dispose of the question of whether Young's subpoena against the Fund was valid *without* a court order. In that regard, the question is only whether the objections filed "on behalf of the Fund" were *effective*, not whether they were ethically proper. If so, then regardless of their propriety Young would be precluded from enforcing the subpoena without a court order. It is not necessary for a non-party served with a subpoena to enter a formal appearance before the issuing court in order to raise objections to the subpoena. Fed. R Civ. P. cmt. 45-21 ("The servee can shift the burden of making a court application to the party who issued the subpoena, merely by serving written objections on that party."). Thus, the fact that no appearance has been filed on behalf of the Fund does not preclude the possibility that the objections were effective. The question then becomes whether, when the trustees' attorney Michael Alaimo faxed the trustees' objections "on behalf of the Fund" on September 11, he was acting pursuant to

9

an official direction or grant of authority from the Fund itself, and not simply from the individual trustees. If he was not, then the objections were ineffective, and the Fund was bound to obey the subpoena.

There is no evidence in the record that enables the Court to answer this question, and it is therefore impossible to ascertain whether the Fund itself should be held in contempt. Accordingly, the Court will require Mr. Alaimo and the other counsel for the trustees to submit any and all evidence that they were retained as counsel for the Fund by an official act of the Fund, or that they were directed by an official act of the Fund to object to the subpoena on the Fund's behalf.

### III.  The Trustees' Standing to Object on Their Own Behalf

The trustees offer several other arguments as to why the subpoena is invalid, the most prominent of which is that it was not properly served on the Fund. In light of the foregoing, however, it is clear that the trustees do not have standing to press these arguments on behalf of the Fund. Further, although no court appearance was necessary for the Fund to object to the subpoena, such an appearance is indeed necessary for the Fund to defend a contempt motion before the Court. The attorneys who have defended this motion through briefing and oral argument, however, have filed appearances only on behalf of the trustees, and not on behalf of the Fund. In order to determine whether these arguments are properly before it, the Court believes it is required to determine whether the trustees have standing in their own right to present these arguments. In addition, if the September 11, 2008 objections are construed as being made by the trustees as individuals, the Court must determine whether they had standing to do so.

10

A. Privilege

Although a party to a lawsuit typically has no standing to object to a subpoena directed at a non-party, standing exists when the party claims a privilege or other personal interest in regard to the requested documents. *E.g.*, *Langford v. Chrysler Motors Corp.*, 513 F. 2d 1121, 1126 (2d Cir. 1975); *City of Ecorse v. U.S. Steel*, No. 07-cv-12131, 2007 WL 4239263, at *2 (E.D. Mich. Dec. 3, 2007); *U.S. v. Wells*, No. 06-10589, 2006 WL 3203905, at *2 (E.D. Mich. Nov. 3, 2006). This exception apparently also permits a party to file objections to a subpoena under Rule 45(c)(2)(B), in the same manner as a person to whom the subpoena is directed. *E.g.*, *Minn. School Boards Ass'n v. Employers Ins. Co. of Wausau*, 183 F.R.D. 627, 629-30 (D. Minn. 1999). The trustees' objections did include a conclusory claim that the documents sought by Young's subpoena were confidential or privileged. Letter from Michael A. Alaimo to Barry B. Sutton, Sept. 11, 2008, docket no. 208-5, ¶ D. It is not clear, however, whether the trustees were thereby asserting a privilege held by themselves or by the Fund. Nor does any substantiation for this claim of privilege appear in the record. Therefore, if the trustees wish to pursue a claim of personal privilege in the documents, the Court will order them to provide a privilege log or similar document in support of the claim. As the parties have not briefed this issue, the Court will also require them to address (1) whether the trustees waived any privilege-based objections they might have had by failing to substantiate such objections within a reasonable time, and (2) whether the objections purportedly filed on behalf of the Fund were adequate to assert a claim that the trustees as individuals held any privilege in the subpoenaed documents.

B. Lack of Notice

11

Another of the objections asserted by the trustees, purportedly on behalf of the Fund, was Young's counsel's failure to give them timely notice of the subpoena. There is no dispute that this failure occurred, or that it wronged trustees personally, in their capacities as parties to this case. Here, the trustees argue that a failure to give proper notice of a subpoena can permit a court to quash it, and that the subpoena in this case should thus not be enforced against the Fund.

As an initial matter, the cases cited by the trustees do not quite stand for the propositions that the trustees say they do. In *Automotive Inspection Servs., Inc. v. Flint Auto Auction, Inc.*, No. 06-15100, 2007 WL 3333016 (E.D. Mich. Nov. 9, 2007), the court sanctioned an attorney for surreptitiously subpoenaing information, and then misleading opposing counsel and the court as to his activities. The opposing party, however, had moved not to quash the subpoena but to dismiss the case and impose sanctions on the attorney. Sanctions, and not quashing, were the relief granted by the court. In *McGarvey v. K-Mart Corp.*, No. C-1-91-487, 1993 WL 51622 (S.D. Ohio Aug. 26, 1993) the movant "agree[d]" that two subpoenas were "in technical compliance with Fed. R. Civ. P. 45," but complained "that service was made without first providing counsel with notice (*e.g.,* an advance phone call)." *Id.* at *1. The court, ruling from the bench, quashed the subpoenas on the basis that lack of notice was "a violation of professional courtesy." *Id.* Of course, the movant's two contentions in *McGarvey* were contradictory -- if the subpoena really was served "without first providing counsel with notice," then it was not in compliance with Rule 45, which had at that time recently been amended to include the notice requirement.

Nevertheless, the Court does not doubt that under the proper circumstances, lack of notice to the other side could be proper grounds for a court to refuse to enforce a subpoena. But the trustees have not moved to quash the subpoena here. Further, as the

12

instant motion for contempt is directed against the Fund, and not against them, the trustees have no standing to complain on the Fund's behalf that they were not given notice. In the absence of a motion to quash, the only remaining basis on which the trustees could properly bring these arguments before the Court would be to assert the effectiveness of their own objections.

As noted above, however, a party to a case generally cannot attack a third-party subpoena except on the basis of the party's own privilege in the subpoenaed information. The Court is unaware of any cases either creating or denying standing for a party to object on the alternative ground that the party was not given notice of the subpoena according to Rule 45(b)(1). This question also has not been briefed by the parties, and the Court will direct them to address it. The Court has already determined that more briefing is necessary on the question of whether the trustees' September 11, 2008 objections can be construed as being asserted on behalf of the trustees personally, instead of the Fund. The answer to the question is then relevant to the effectiveness of their objection in regard to notice as well.

C. Improper Service

The trustees also claim that service of the subpoena on the Fund was inadequate. For the reasons given above, this argument can only be made by the Fund itself; the trustees have no standing to present it either in their capacities as parties to the case or on behalf of the Fund. There is no dispute that the Fund's administrator actually did receive notice of the subpoena, and the trustees do not claim that any deficiency in service impaired the Fund's ability to challenge the subpoena or defend this motion on its own behalf. Therefore, the question of what kind of service is required for a subpoena by Rule 45 is not properly before the Court, and will not be considered here.

13

## CONCLUSION AND ORDER

The trustees have given the Court no reason to question the Fund's status as an ERISA plan. As a result, under ERISA it can and must be served with subpoenas in its own right, not just derivatively through its trustees. Similarly, to permit the trustees to personally respond to the subpoena on behalf of the Fund would be to needlessly complicate the law, and to tempt ERISA fiduciaries to abuse their authority when sued for breaching their duties to their plans. Thus, the Court concludes that, as a general rule, only the Fund itself and not the trustees are permitted to contest the validity of the subpoena.

The trustees here are permitted to assert that they personally hold privileges in the documents requested of the Fund. It is unclear whether they have done so in this case, or if they have whether their objection is sufficient to prevent the enforcement of the subpoena without a court order. It is also unclear whether Young's failure to give proper notice of the subpoena to the trustees created grounds from them to file objections to the subpoena. Additionally, the Fund itself unquestionably had standing to file objections, but it is unclear whether attorney Alaimo was representing the trustees, the Fund, or both when he filed the objections. In light of the Court's conclusion that the Fund is an entity independent of the trustees in this matter, however, there can be no doubt that additional representation of the Fund and the trustees by the same counsel risks creating a serious conflict of interest on the part of counsel, and impairing the legal interests of either or both clients.

The trustees have offered a few other arguments for the invalidity of the subpoena, but there is no question that they have no standing to present these.

**WHEREFORE**, it is hereby **ORDERED** that plaintiff's motion for an order to show cause why the Fund should not be held in contempt of court is **GRANTED**, as follows:

Within 14 days of the entry of this order, both Young and the trustees shall submit briefs and supporting factual information addressing the following questions:

(1)  Whether the objections sent by attorney Alaimo on September 11, 2008 should be construed as being lodged by the trustees personally, in their capacities are parties to this case,

(2)  If so, (a) whether the assertion of privilege therein was sufficient to require a court order in order to enforce the subpoena, and (b) whether the trustees waived any privilege-based objections they might have had by failing to substantiate such objections within a reasonable time.  If the trustees wish to argue in favor of non-waiver, they shall file whatever substantiating materials they have concurrently with their brief; and

(3)  Whether, under Federal Rule of Civil Procedure 45(c)(2)(B), a party to a case may file objections to a document subpoena directed at a third party, when the party issuing the subpoena failed to provide timely notice thereof to the objecting party.

Each side's brief be no more than 15 pages in length.  No response or reply briefs may be submitted;

Within 20 days of the date of entry of this order, Counsel for the trustees shall additionally submit in evidence any documentation or testimony they may have which shows or tends to show that the Fund, through an official action, had authorized or directed them to file objections to subpoenas served upon it in this matter;

Except for submitting the aforementioned evidence, until the termination of this litigation neither Michael A. Alaimo nor any other attorney serving as counsel for any of the defendants in this matter shall take any further action on behalf of the Iron Workers' Local 25 Pension Fund.

**SO ORDERED.**

                              s/Stephen J. Murphy, III
                              STEPHEN J. MURPHY, III
                              United States District Judge

Dated: March 10, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 10, 2009, by electronic and/or ordinary mail.

                              Alissa Greer
                              Case Manager