**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

IRON WORKERS LOCAL 25 PENSION
FUND, et al.,

                Plaintiffs,                        Case No. 04-40243
                                                    Hon. Stephen J. Murphy, III

v.                                                Hon. Donald A. Scheer

WATSON WYATT AND COMPANY,

                Defendant.

and                                               **CONSOLIDATED WITH**

GEORGE HENRY YOUNG, HARVEY WEGLARZ,
and WILLIAM CHAKUR,

                Intervening Plaintiffs,        Case No. 07-12368
v.                                                Hon. Stephen J. Murphy, III
                                                    Hon. Donald A. Scheer

JAMES HAMRIC, JAMES EDWARDS, PATRICK
GLEASON, STEVEN GULICK, D. JAMES WALKER,
JR., ART ELLUL, J. MICHAEL ROGERS ("Trustee
Defendants"), and ANTHONY ASHER, MICHAEL J.
ASHER and SULLIVAN, WARD, ASHER &
PATTON, P.C., a Professional Corporation,

                Defendants.
_____

**DEFENDANTS ANTHONY ASHER, MICHAEL J. ASHER, AND SULLIVAN, WARD,
ASHER & PATTON, P.C.'S (COLLECTIVELY, "SULLIVAN WARD") MOTION AND
BRIEF IN SUPPORT TO DISMISS NEW COUNTS ALLEGED IN INTERVENING
PLAINTIFFS' SECOND AMENDED COMPLAINT**

## <u>MOTION</u>

Over two years after moving to intervene to challenge Sullivan Ward's fee, George Young, Harvey Weglarz, and William Chakur ("Intervening Plaintiffs") filed a second amended complaint, which alleges six new counts against Sullivan Ward.   As discussed in detail in Sullivan Ward's ensuing brief, all six new counts fail to state a claim upon which relief can be granted and should be dismissed now and with prejudice under Fed. R. Civ. P. 12(b)(6).

In compliance with E.D.Mich. LR 7.1(a), by way of a Tuesday, 8.18.09 telephone conversation, Sullivan Ward's counsel explained to opposing counsel the nature of, bases and supporting law for, and relief sought by this motion, and asked that Intervening Plaintiffs voluntarily dismiss their six new counts or, alternatively, concur with this motion to dismiss the counts.   Opposing counsel did not concur with either request.

## BRIEF IN SUPPORT OF MOTION

### Concise Statement of Issues Presented

I.    Should the Court dismiss the second amended complaint's six new counts, because they fail to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6)?

### Controlling or Most Appropriate Authority for the Relief Sought

29 U.S.C. § 1002(21)(A).

45 C.F.R. § 2509.75-5 (D-1).

Michigan Compiled Laws § 600.1405.

Michigan Rules of Professional Conduct 1.0(b).

Michigan Rules of Professional Conduct 1.13(a).

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1237 (2009).

*Atlanta Int'l Ins. Co. v. Bell*, 475 N.W.2d 294, 296 (Mich. 1991).

*Beaty v. Hertzberg & Golden, P.C.*, 517 N.W.2d 716, 719 (Mich. 1997).

*Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1964-65 (2007).

*Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).

*Custer v. Sweeney*, 89 F.3d 1156 (4th Cir. 1996).

*Fletcher v. Bd. of Ed.*, 35 N.W.2d 177, 180 (Mich. 1949).

*Gianotta v. Hoderid*, 372 N.W.2d 326, 327 (Mich. App. 1985).

*In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997).

*Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007).

*Kilkenny v. Guy C. Long, Inc.*, 288 F.3d 116, 124 (3d Cir. 2002)

*Melody Farms, Inc. v. Carson Fischer, P.L.C.*, 2001 WL 740575 at *5 (Mich. App. Feb. 16, 2001).

*Mieras v. DeBona*, 550 N.W.2d 202 (Mich. 1996).

*Nieto v. Ecker*, 845 F.2d 868 (9th Cir. 1988).

*Prentis v. Barbara Ann Karmanos Cancer Institute and Honigman, Miller, Schwartz & Cohn*, 698 N.W.2d 900 (Mich. App. 2005), *lv den* 703 N.W.2d 816 (Mich. 2005).

*Schultz v. United States*, 529 F.3d 343, 349 (6th Cir. 2008).

*Simko v. Blake*, 532 N.W.2d 842, 846 (Mich. 1995).

*Smith v. Provident Bank*, 170 F.3d 609, 613, 615 (6th Cir. 1999).

*Stillman v. Goldfarb*, 431 N.W.2d 247, 250-51 (Mich. App. 1988).

*Watts v. Polaczyk*, 619 N.W.2d 714, 718 n.1 (Mich. App. 2000).

*Whitehead v. Rainey, Ross, Rice & Binns*, 997 P.2d 177 (Okla. Civ. App. 1999).

*Yadlosky v. Grant Thornton, L.L.P.*, 120 F. Supp. 2d 622, 634 (E.D. Mich. 2000).

# TABLE OF CONTENTS

Page

Index of Authorities ................................................................................................ vi

Index of Exhibits ..................................................................................................... ix

Introduction ...............................................................................................................1

Statement of Facts .....................................................................................................2

Argument ...................................................................................................................3

I. Standard of Review. ...........................................................................................3

II. Intervening Plaintiffs' Breach of Contract Claim (Count I) and their Claim To Seek a Declaration Regarding the Fee Agreement (Count II(A-F) and (H)) Fail, Because Intervening Plaintiffs (1) Lack Standing and (2) Violate the Fund's Trust document...........4

    a. Intervening Plaintiffs lack standing. ........................................................5

    b. Intervening Plaintiffs have no right to bring claims under the Fund's trust document.......................................................................................................7

III. Intervening Plaintiffs Lack Standing For a Legal Malpractice Claim (Count III(1)) or to Pursue Alleged Violations of the Michigan Rules of Professional Conduct (Sections E and H of Count II) Because They Have No Attorney-Client Relationship With Sullivan Ward and This Is Not the Rare Circumstance Where a Non-Client Can Pursue Such Claims. ....................................8

    a. The requirement of an attorney-client relationship, which Intervening Plaintiffs do not have. ..............................................................................8

    b. The public policy for the attorney-client relationship requirement, which is fully implicated here. ...........................................................................9

    c. Analogous case law......................................................................................11

    d. This is not the rare exception to the attorney-client relationship rule...................13

IV. Intervening Plaintiffs' Common Law Breach of Fiduciary Duty Claim (Count III(2)) Fails Because (1) It is Preempted by ERISA, (2) Intervening Plaintiffs Lack Standing, and (3) the Claim is Barred by the "No Duplication Rule." .................................15

V. Intervening Plaintiffs' Claims Based on Sullivan Ward's Alleged "Fiduciary" Status (Counts II(G), IV, and V) Fail To State a Claim Because Sullivan Ward Is Not a Fiduciary and the Claims Do Not Satisfy Rule 8 Pleading Requirements...........................16

iv

a.     The general rule is that an attorney is not a fiduciary..............................................16

b.     The facts alleged are "professional functions," which do not render
Sullivan Ward a fiduciary. ......................................................................................17

c.     Intervening Plaintiffs' remaining allegations are legal conclusions.....................19

Conclusion ...................................................................................................................................20

# <u>INDEX OF AUTHORITIES</u>

**Cases**

*Alfarone v. Bernie Wolff Constr. Corp.*, 788 F.2d 76 (2d Cir. 1986) .............................. 7

*Alken-Ziegler v. Bearup*, 2006 WL 572571 (Mich. Ct. App. Mar. 9, 2006) ................................ 16

*Anoka Orthopaedic Assocs., P.A. v. Mutschler*, 709 F.Supp. 1475 (D. Minn. 1989).................. 17

*Ashcroft v. Iqbal*, 556 U.S. ___; 129 S. Ct. 1237 (2009)...................................... 4, 19, 20

*Atlanta Int'l Ins. Co. v. Bell*, 475 N.W.2d 294 (Mich. 1991) ................................... 9, 13

*Auto-Owners Ins. Co. v. Amoco Prod. Co.*, 658 N.W.2d 460 (Mich. 2003) ............................... 13

*Barnard v. Dilley*, 350 N.W.2d 887 (Mich. App. 1984)..................................................... 16

*Barnes v. Owens-Corning Fiberglass Corp.*, 201 F.3d 815 (6th Cir. 2000) ................................... 5

*Beaty v. Hertzberg & Golden, P.C.*, 517 N.W.2d 716 (Mich. 1997)...................................... 9, 13

*Bell Atlantic Corp. v. Twombly*, 540 U.S. 544 (2007) ...................................... 4, 19, 20

*Bishop v. Lucent Tech., Inc.*, 520 F.3d 516 (6th Cir. 2008)................................... 19, 20

*Buczkowski v. McKay*, 490 N.W.2d 330 (Mich. 1992)................................................. 10

*Bullis v. Downes*, 612 N.W.2d 435 (Mich. App. 2000)..................................................... 6

*Coleman v. Gurwin*, 503 N.W.2d 435 (Mich. 1993) ....................................................... 8

*Custer v. Sweeney*, 89 F.3d 1156 (4th Cir. 1996) .................................................. 17, 18

*Danou v. Cummins, McClorey, Davis & Acho, P.L.C.*, 2006 WL 120369 (Mich. App. Jan. 17, 2006).................................................................................. 16

*Everett v. USAir Group, Inc.*, 165 F.R.D. 1 (D. D.C. 1995)......................................... 15

*Fletcher v. Bd. of Ed.*, 35 N.W.2d 177 (Mich. 1949) ..................................................... 8

*Fournier v. PFS Inv., Inc.*, 997 F. Supp. 828 (E.D. Mich. 1998) ................................... 3

*Garey v. Kelvinator Corp.*, 271 N.W. 723 (Mich. 1939)..................................................... 8

*Gianotta v. Hoderid*, 372 N.W.2d 326 (Mich. App. 1985)................................................... 5

*Hatteberg v. Red Adair Co., Inc. Employees' Profit Sharing Plan and its Related Trust*, 79 Fed.Appx. 709 (5th Cir. 2003) ..................................................... 17

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .............................................................. 3

*In re Mushroom Transp. Co., Inc.*, 382 F.3d 325 (3d Cir. 2004) ................................... 17

*In re Sofamor Danek Group, Inc.,* 123 F.3d 394 (6th Cir. 1997) ............................... 3, 4

*Kannapien v. Quaker Oats Co.*, 507 F.3d 629 (7th Cir. 2007)....................................... 17

*Kilkenny v. Guy C. Long, Inc.*, 288 F.3d 116 (3d Cir. 2002)......................................... 7

*Koenig v. City of South Haven*, 597 N.W.2d 99 (Mich. 1999) ......................................... 6

*Laborers' Pension Fund v. Arnold*, 2001 WL 197634 (Feb. 27, 2001 N.D. Ill) .................. 18, 19

*League of United Latin American Citizens v. Bredesen*, 500 F.3d 523 (6th Cir. 2007) ............................................................................................................. 4

*Mack v. S. Bay Beer Distribs., Inc.,* 798 F.2d 1279 (9th Cir. 1986), *abrogated on other grds by* 501 U.S. 104 (1991) ..................................................................... 7

*Marzuola v. Cont'l Tire N. Am.*, 243 Fed.Appx. 956 (6th Cir. 2007)...................... 7

*Melody Farms, Inc. v. Carson Fischer, P.L.C.*, 2001 WL 740575 (Mich. App. Feb. 16, 2001) ..................................................................................................... 16

*Mezobov v. Allen*, 411 F.3d 712 (6th Cir. 2005) ................................................... 19

*Mieras v. DeBona*, 550 N.W.2d 202 (Mich. 1996)............................... 5, 6, 9, 13, 14

*Morgan v. Church's Fried Chicken,* 829 F.2d 10 (6th Cir. 1987) .............................. 4

*N. Y. State Teamsters Council Health and Hosp. Fund v. Estate of DePerno*, 816 F.Supp. 138 (N.D. N.Y. 1993)......................................................................... 17

*Nieto v. Ecker*, 845 F.2d 868 (9th Cir. 1988).................................................. 17, 18

*Pappas v. Buck Consultants, Inc.*, 923 F.2d 531 (7th Cir. 1991) ........................... 18

*Phillips v. Bureau of Prisons,* 591 F.2d 966 (D.C. Cir. 1979)................................... 7

*Portage Aluminum Co. v. Kentwood Nat'l. Bank*, 307 N.W.2d 761 (Mich. App. 1981) ............................................................................................................... 15

*Prentis v. Barbara Ann Karmanos Cancer Institute and Honigman, Miller, Schwartz & Cohn,* 698 N.W.2d 900 (Mich. App. 2005), *lv den* 703 N.W.2d 816 (Mich. 2005) ................................................................................... 11, 12

*Pukke v. Hyman Lippitt, P.C.*, 2006 WL 1540781 (Mich. App. June 6, 2006) ........... 16

*Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56 (3d Cir. 2007)........................ 14

*S. Council of Indus. Workers v. Ford*, 83 F.3d 966 (8th Cir. 1996) ........................ 17

*S. Ill. Carpenters Welfare Fund v. Carpenters Welfare Fund of Ill.*, 326 F.3d 919 (7th Cir. 2003) ................................................................................................ 17

*Schultz v. United States*, 529 F.3d 343 (6th Cir. 2008)........................................... 7

*Scott v. Green*, 364 N.W.2d 709 (Mich. App. 1985) ............................................... 8

*Sharma v. Giomarco*, 2004 WL 2176786 (Mich. App. Sept. 28, 2004)................... 16

*Simko v. Blake*, 532 N.W.2d 842 (Mich. 1995) .......................................... 8, 10, 13

*Smith v. Provident Bank*, 170 F.3d 609 (6th Cir. 1999)........................................ 15

*Stillman v. Goldfarb*, 431 N.W.2d 247 (Mich. App. 1988) ................................ 5, 14

*Useden v. Acker*, 947 F.2d 1563 (11th Cir. 1991) ................................................ 17

*Vest v. Gleason & Fritzshall*, 832 F.Supp. 1216 (N.D. Ill. 1993) ............................ 17

*Warrior Sports, Inc. v. STX, L.L.C.*, 596 F. Supp. 2d 1070 (E.D. Mich. 2009)............ 7

*Washington-Baltimore Newspaper Guild v. Washington Star Co.*, 543 F. Supp. 906 (D. D.C. 1982) .......................................................................................... 15

*Watts v. Polaczyk*, 619 N.W.2d 714 (Mich. App. 2000) .......................................... 8

*Whitehead v. Rainey, Ross, Rice & Binns,* 997 P.2d 177 (Okla. Civ. App. 1999) ........... 12, 13, 15

*Yadlosky v. Grant Thornton, L.L.P.*, 120 F. Supp. 2d 622 (E.D. Mich. 2000) .............. 6

*Yaseta v. Baima*, 837 F.2d 380 (9th Cir.1988) ........................................................ 17

## Statutes

29 U.S.C. § 1002(21) .......................................................................................... 17, 18

29 U.S.C. § 1002(21)(A) ........................................................................................ 17

29 U.S.C. § 1102(a)(1) ............................................................................................ 7

MCL § 600.1405 .................................................................................................... 5, 6

MCL § 600.1405(1) ................................................................................................. 5

## Other Authorities

5 C. Wright & A. Miller, *Federal Practice,* § 1357 (1969) ........................................ 7

## Rules

E.D.Mich. LR 7.1(a) ................................................................................................ i

Fed. R. Civ. P. 12(b)(6) ................................................... i, ii, 1, 2, 3, 7, 15, 19, 20

Fed. R. Civ. P. 12(d) ............................................................................................... 7

Fed. R. Civ. P. 56(c) ............................................................................................... 7

Fed. R. Civ. P. 8 ............................................................................................ 2, 16, 19

Fed. R. Civ. P. 8(a) ............................................................................................... 20

Fed. R. Civ. P. 8(a)(2) ............................................................................................. 4

Mich. R. Prof. Conduct 1.0(b) ................................................................................. 8

Mich. R. Prof. Conduct 1.13(a) ........................................................................... 9, 11

Mich. R. Prof. Conduct 1.3 ..................................................................................... 10

Mich. R. Prof. Conduct 1.7 ..................................................................................... 10

Mich. R. Prof. Conduct 1.7(b) ................................................................................ 10

Mich. R. Prof. Conduct 1.9 ..................................................................................... 10

## Regulations

45 C.F.R. § 2509.75-5 (D-1) .............................................................................. 17, 19

## <u>INDEX OF EXHIBITS</u>

1.     *Whitehead v. Rainey, Ross, Rice & Binns,* 997 P.2d 177 (Okla. Civ. App. 1999)

2.     *Laborers' Pension Fund v. Arnold*, 2001 WL 197634 (Feb. 27, 2001 N.D. Ill)

**Introduction**

In their second amended complaint, Intervening Plaintiffs allege ten counts.  Four present the claims alleged in their first amended complaint.  That is, Count VI (Violation of the Reasonable Agreement Provision for Services Rendered Under ERISA), Count VII (Payment of Unreasonable Compensation as a Prohibited Transaction), Count VIII (Breach of Fiduciary Duty of the Trustees), and Count IX (Application for Attorney Fees) are, respectively, the claims alleged in Counts I, II, III and the prayer for relief of the first amended complaint.  At this time, Sullivan Ward does not challenge those four counts of the second amended complaint.

But all six new counts in the second amended complaint fail to state a claim for relief under Fed. R. Civ. P. 12(b)(6), and should be dismissed now and with prejudice.  Summarily, this is because:

1.     For their first new count, Breach of Contract (Count I), Intervening Plaintiffs lack standing, because they are not parties to the contingency fee agreement ("Agreement") between Sullivan Ward and the Fund.  Intervening Plaintiffs also have no right to bring this claim under the Fund's trust document.

2.     For Sections A-F and H of Count II, titled Declaratory Judgment, Intervening Plaintiffs allege a breach of, or challenge the validity of, the Agreement. Intervening Plaintiffs again lack standing, because they are not parties to the Agreement and have no rights under the Fund's trust document.

3.     For their Legal Negligence count (Count III(1)),[1] as well as their alleged violations of the Michigan Rules of Professional Conduct (Sections E and H of Count II), Intervening Plaintiffs lack standing because they have no attorney-

---

[1] Two counts are labeled as Count III.  For ease of reference, this brief refers to them as Count III(1) (Legal Malpractice) and Count III(2) (Breach of Common Law Fiduciary Duty).

client relationship with Sullivan Ward, and this is not the "rare" circumstance under Michigan law where a non-client can pursue such claims.

4.    Intervening Plaintiffs' Breach of Common Law Fiduciary Duty claim (Count III(2)) fails, because (a) the claim is preempted by ERISA, (b) Intervening Plaintiffs lack standing, and (c) the claim is barred by Michigan law's "no-duplication" rule.

5.    Intervening Plaintiffs' claims based on Sullivan Ward's alleged "Fiduciary" status (Counts II(G), IV, and V) fail because they allege only "professional function" acts, which do not render Sullivan Ward a fiduciary, and they do not satisfy Rule 8 pleading requirements.

### Statement of Facts

Few "facts" alleged in the second amended complaint need be recited.  While strongly wishing to address the many omissions and misrepresentations in the second amended complaint, Sullivan Ward will resist the temptation, because doing so is irrelevant to and improper under a 12(b)(6) motion.[2]  Pertinent as background to Sullivan Ward's legal arguments are the following allegations in the second amended complaint:

- The Iron Workers Local 25 Pension Fund (the "Fund") provides benefits to over 5,000 participants and beneficiaries, ¶ 20.

- During a May 6, 2004 Board of Trustees Meeting, Sullivan Ward and the Fund trustees discussed how to pay Sullivan Ward for litigating the *Watson Wyatt* lawsuit, ¶ 51.

- At the meeting, Anthony Asher offered two types of fee arrangements, hourly and contingency, ¶ 56.  The defendants claim that an agreement was reached at the meeting for Sullivan Ward to handle the *Watson Wyatt* lawsuit on a contingency fee basis, ¶ 68.

---

[2] Sullivan Ward does, however, submit that the Court can take judicial notice of the fact that <u>Intervening Plaintiff Young is no longer a Fund trustee</u>.  It is undisputed that he failed at his June 2009 re-election attempt.

2

- None of the six then-trustees questioned the legality or reasonableness of it and, on January 20, 2005, the contingency fee agreement ("Agreement") was executed, ¶¶ 83 and 84.

- On August 30, 2006, Anthony Asher offered to let the Fund revert to an hourly fee agreement for Sullivan Ward's handling of the *Watson Wyatt* lawsuit, ¶ 138. Purportedly, Mr. Young did not hear the offer, but the other trustees who did hear it, rejected it, *id*.

- On March 23, 2007, the Fund trustees—including Mr. Young—unanimously approved a $110,000,000 settlement offer that Sullivan Ward procured from Watson Wyatt, ¶ 159.

- On April 16, 2007, Intervening Plaintiffs moved to prevent the disbursement of Sullivan Ward's fee; since April 18, 2007, the fee has been held in an interest-bearing account for "determination by this Court of the attorney fees and Agreement[,]" ¶¶ 163-164.

- Other than their ERISA claims, Intervening Plaintiffs' claims are controlled by Michigan law, ¶ 16; see also ¶¶ 213, 221, 231, and 232.

<u>Argument</u>

Intervening Plaintiffs' entire second amended complaint centers on the validity and reasonableness of Sullivan Ward's fee in the underlying *Watson Wyatt* lawsuit; determinations that are already before the Court via the first amended complaint. Despite that fact and the fact that the review of an attorney fee should not be turned into a second, major litigation, *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Fournier v. PFS Inv., Inc.*, 997 F. Supp. 828, 831 (E.D. Mich. 1998), Intervening Plaintiffs felt the need to allege six new counts against Sullivan Ward. As noted above and detailed below, all six new counts fail to state a claim upon which relief can be granted and should be dismissed under Fed. R. Civ. P. 12(b)(6).

I.    <u>Standard of Review.</u>

A motion under Fed. R. Civ. P. 12(b)(6) is a question of law. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997). Intervening Plaintiffs' allegations are deemed admitted and ambiguous allegations construed in their favor. *Id.* But they must do more than

allege legal conclusions, and this Court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Id.* (quoting *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987)).

Indeed, as set forth in *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original), Intervening Plaintiff's

> obligation [under Fed. R. Civ. P. 8(a)(2)] to provide the "grounds" of [their] entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action. *Bell Atlantic Corp. v. Twombly,* __ U.S. __, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief. *Id.* at 1965.

On May 18, 2009, the United States Supreme Court issued its decision in *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1237 (2009). In *Iqbal*, the United States Supreme Court amplified its above-cited decision, *Twombly*, 560 U.S. 544 (2007), to require a court reviewing a motion to dismiss to "draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. 1950. *Iqbal* also made clear that *Twombly* applies to all civil cases. *Iqbal*, 129 S. Ct. at 1953.

**II.** **Intervening Plaintiffs' Breach of Contract Claim (Count I) and their Claim To Seek a Declaration Regarding the Fee Agreement (Count II(A-F) and (H)) Fail, Because Intervening Plaintiffs (1) Lack Standing and (2) Violate the Fund's Trust document.**

In Count I of their second amended complaint, Intervening Plaintiffs allege that Sullivan Ward breached the contingency fee agreement ("Agreement") with the Fund. Similarly, in Sections A-F and H of Count II, titled Declaratory Judgment, they allege a breach of, or challenge the validity of, the Agreement. Intervening Plaintiffs lack standing to assert these claims, because they are not parties to the Agreement. Intervening Plaintiffs also have no right to bring these claims under the Fund's trust document.

a.    **Intervening Plaintiffs lack standing.**

An individual who is not a party to a contract has no standing to bring a breach of contract claim.  See *Gianotta v. Hoderid*, 372 N.W.2d 326, 327 (Mich. App. 1985).  Similarly, a non-party does not have standing to challenge the validity of a contract.  *See Stillman v. Goldfarb*, 431 N.W.2d 247, 250-51 (Mich. App. 1988).  It is undisputed that the Agreement— which forms the basis of Count I and Sections A-F and H of Count II of the second amended complaint—is a contract between the Fund and Sullivan Ward, and that Intervening Plaintiffs are not a party to or mentioned in it.  Indeed, Intervening Plaintiffs repeatedly admit that fact.  See Second Amended Complaint, ¶¶ 31, 33, 36, 48, 50, 52, 54, 55, 76, 95, 115, 240.[3]

Because it is undisputed that Intervening Plaintiffs are not a party to the Agreement, they must seek some other way to assert standing.  Thus, as in their reply to Sullivan Ward's brief opposing leave, they likely will argue that they have standing as "third party beneficiaries" under (1) Michigan Compiled Laws § 600.1405 and (2) *Mieras v. DeBona*, 550 N.W.2d 202 (Mich. 1996).  Both arguments are without merit.

Michigan Compiled Laws § 600.1405 provides, in pertinent part (emphasis added):

Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.

(1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something **directly** to or for said person.

"Use of the term 'directly' [in Mich. Comp. Laws § 600.1405(1)] 'indicates the Legislature's intent to assure that contracting parties are clearly aware that the scope of their

---

[3] Although the fact cannot be logically disputed, Intervening Plaintiffs are bound by their admissions that the Agreement is between the Fund and Sullivan Ward and is not between them and Sullivan Ward.  See *Barnes v. Owens-Corning Fiberglass Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) (admissions in pleadings are generally binding on the parties and the Court; such admissions "'have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact'") (citations omitted).

contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract.'" *Yadlosky v. Grant Thornton, L.L.P.*, 120 F. Supp. 2d 622, 634 (E.D. Mich. 2000) (quoting *Koenig v. City of South Haven*, 597 N.W.2d 99, 104 (Mich. 1999)).   And it is undisputed that Intervening Plaintiffs are not "directly referred to" in the Agreement between Sullivan Ward and the Fund; in fact, it is undisputed that there is no mention of "participants" or "beneficiaries" in the Agreement.   Thus, any argument by Intervening Plaintiffs that they have standing to assert a breach of contract claim under Mich. Comp. Laws § 600.1405 is misplaced.

Also misplaced is any argument that Intervening Plaintiffs have standing under *Mieras*. In *Mieras*, the Michigan Supreme Court addressed a <u>named beneficiary's</u> right to challenge the <u>drafting of a will</u>, holding, "beneficiaries <u>named</u> in a will <u>may bring a tort-based cause of action</u> against the attorney who drafted the will for negligent breach of the standard of care owed to the beneficiary by nature of the beneficiary's third-party beneficiary status." 550 N.W.2d at 214-15 (emphasis added).

Here, the document at issue is not a will.   Here, and again, it is undisputed that Intervening Plaintiffs are not named in the Agreement.   Here, in Count I and Sections A-F and H of Count II,   Intervening Plaintiffs are asserting breach of contract claims, not "tort based" claims.[4]   It follows that, under *Mieras*, Intervening Plaintiffs lack standing to challenge the Agreement.   See also *Bullis v. Downes*, 612 N.W.2d 435, 468 (Mich. App. 2000) ("[I]t is better to speak of a third-party beneficiary's standing as having arisen out of the individual's status as a <u>named beneficiary</u> in a decedent's overall estate plan.") (emphasis added).

---

[4] The ensuing legal argument section details why Intervening Plaintiffs lack standing for their "tort based" claim, legal malpractice, not the least of which is that they are not "named" in the Agreement.

And because Intervening Plaintiffs do not have standing to challenge performance of the Agreement, they do not have standing to seek declaration of rights under it. This is because a party seeking declaratory relief must first establish its standing to sue. See *Schultz v. United States*, 529 F.3d 343, 349 (6th Cir. 2008); *Marzuola v. Cont'l Tire N. Am.*, 243 Fed.Appx. 956 (6th Cir. 2007); *Warrior Sports, Inc. v. STX, L.L.C.*, 596 F. Supp. 2d 1070, 1074 (E.D. Mich. 2009). Intervening Plaintiffs cannot establish standing; thus, their declaratory claims in Sections A-F and H of Count II also fail to state a claim under Fed. R. Civ. P. 12(b)(6).

**b.** **Intervening Plaintiffs have no right to bring claims under the Fund's trust document.**

Intervening Plaintiffs also have no right to bring these claims under the Fund's trust document. A trust agreement properly limits the powers and duties regarding whether to bring suit, because ERISA "expressly contemplates joint administration of trust funds. 29 U.S.C. § 1102(a)(1)." *Kilkenny v. Guy C. Long, Inc.*, 288 F.3d 116, 124 (3d Cir. 2002) (quoting *Alfarone v. Bernie Wolff Constr. Corp.*, 788 F.2d 76, 79 (2d Cir. 1986)) (dismissing a trustee suit for lack of standing). As set forth in the Fund's Agreement and Declaration of Trust, legal actions can only be brought by a majority of the Fund's board of trustees; *i.e.*, by approval of at least four of the six trustees. See Intervening Plaintiffs' Brief for Leave to Amend (Docket No. 268), Exhibit 2, §§ 2.9 and 5.3(d).[5] The majority of Fund trustees have not approved Intervening Plaintiffs' filing of the instant claims. Thus, for yet another reason, Intervening Plaintiffs fail to state a claim and Count I and Sections A-F and H of Count II should be dismissed.

---

[5] This Court may review the Trust document and still decide Sullivan Ward's motion under Fed. R. Civ. P. 12(b)(6). See *Phillips v. Bureau of Prisons,* 591 F.2d 966, 969 (D.C. Cir. 1979) (citing 5 C. Wright & A. Miller, *Federal Practice,* § 1357 at 593 (1969) (in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court may look beyond the complaint to matters of public record and doing so does not convert the motion to one for summary judgment under Fed. R. Civ. P. 56(c)); *accord Mack v. S. Bay Beer Distribs., Inc.,* 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grds by* 501 U.S. 104 (1991). Alternatively, this argument may be treated and granted as one for summary judgment under Fed. R. Civ. P. 12(d).

**III.** **Intervening Plaintiffs Lack Standing For a Legal Malpractice Claim (Count III(1)) or to Pursue Alleged Violations of the Michigan Rules of Professional Conduct (Sections E and H of Count II) Because They Have No Attorney-Client Relationship With Sullivan Ward and This Is Not the Rare Circumstance Where a Non-Client Can Pursue Such Claims.**

In Count III(1) of their second amended complaint, Intervening Plaintiffs assert a legal malpractice claim against Sullivan Ward.  While not citing any specific rules, in Sections E and H of Count II of their second amended complaint, Intervening Plaintiffs allege that Sullivan Ward violated duties owed under the Michigan Rules of Professional Conduct.  (Besides failing to state a claim for the reasons stated above and in this legal argument section, <u>the claims asserted under Sections E and H of Count II fail because violations of the Michigan Rules of Professional Conduct do not give rise to a cause of action</u>.  Mich. R. Prof. Conduct 1.0(b); *Watts v. Polaczyk*, 619 N.W.2d 714, 718 n.1 (Mich. App. 2000).  Intervening Plaintiffs lack standing to challenge Sullivan Ward's alleged violations of legal duties, because they have no attorney-client relationship with Sullivan Ward and do not meet the criteria for the rare-exception of a non-client having a right to sue for an attorney's violation of legal duties.

 **a.**  **The requirement of an attorney-client relationship, which Intervening Plaintiffs do not have.**

To assert a legal malpractice claim, a plaintiff must first establish the existence of an attorney-client relationship, which is a question of law.  *Simko v. Blake*, 532 N.W.2d 842, 846 (Mich. 1995) (citation omitted); see also *Coleman v. Gurwin*, 503 N.W.2d 435, 436 (Mich. 1993).  The creation of an attorney-client relationship is generally governed by principles of contract law.  See *Fletcher v. Bd. of Ed.*, 35 N.W.2d 177, 180 (Mich. 1949); *Garey v. Kelvinator Corp.*, 271 N.W. 723 (Mich. 1939).  An attorney-client relationship cannot be created unilaterally; a putative client's unilateral or subjective belief is not sufficient to create the relationship.  *Scott v. Green*, 364 N.W.2d 709, 717 (Mich. App. 1985).  Here, as discussed

above, the "contract" documents (the Agreement and the Trust document) and Intervening Plaintiffs' judicial admissions establish that there is no attorney-client relationship between Intervening Plaintiffs and Sullivan Ward.

### b.      The public policy for the attorney-client relationship requirement, which is fully implicated here.

Rule 1.13(a) of the Michigan Rules of Professional Conduct (promulgated by the Michigan Supreme Court), dictates that where, as here, a lawyer represents an organization, the lawyer does so "distinct from its directors, officers, employees, members, shareholders, or other constituents." In other words, as Intervening Plaintiffs repeatedly admit in the second amended complaint, Sullivan Ward's client in the *Watson Wyatt* lawsuit was the Fund, not the Fund's participants or beneficiaries. As noted, under the Fund's Agreement and Declaration of Trust, Fund certain decisions, including whether or not to bring legal actions, are made by the approval of at least four of the six Fund trustees.

Absent "special" or "unique" circumstances, a legal malpractice claim can only be brought by a client. *Mieras*, 550 N.W.2d at 212; *Beaty v. Hertzberg & Golden, P.C.*, 517 N.W.2d 716, 719 (Mich. 1997). It is a rare circumstance where an attorney's actions that affect a non-client will give rise to a legitimate suit by a third party. See generally *Beaty*, 517 N.W.2d at 719-23. The attorney-client relationship rule "exists to ensure the inviolability of the attorney's duty of loyalty to the client." *Atlanta Int'l Ins. Co. v. Bell*, 475 N.W.2d 294, 296 (Mich. 1991).

The rule "prevent[s] conflicts from derailing the attorney's unswerving duty of loyalty of representation to the client." *Id.* Accordingly, Michigan courts are consistently "reluctan[t] to permit an attorney's actions that affect a non-client to be a predicate to liability because of the potential for conflicts of interest that could seriously undermine counsel's duty of loyalty to the client." *Beaty*, 517 N.W.2d at 720.

Here, the creation of a "duty" owed to Intervening Plaintiffs, as 3 of the Fund's 5,000+ participants and beneficiaries, would inexorably lead to two separate and very serious problems.[6] The first problem involves how the lawyer goes about identifying and determining the scope of her or his duty. For instance, Intervening Plaintiffs allege that the Fund has over 5,000 participants and, as 3 of those participants, Intervening Plaintiffs have a right to maintain this action. (Second Amended Complaint, ¶ 20.) Does that mean that any of the 5,000 Fund participants could bring a malpractice claim against Sullivan Ward?

Further, if all 5,000+ participants or beneficiaries are clients, then Sullivan Ward would jointly represent them under Michigan Rule of Professional Conduct 1.7(b). Does that mean Sullivan Ward had a duty to evaluate conflicts of interest under Rules 1.7 and 1.9 for all 5,000+ participants or beneficiaries? Did all 5,000+ participants or beneficiaries have to approve the Agreement before it was entered into? Under Michigan law, the answer must be a resounding "no." Otherwise, no Fund or large organization could ever be represented by one lawyer or firm.

The second problem inexorably caused by the creation of a "duty" owed to Intervening Plaintiffs, as 3 of the 5,000+ Fund participants and beneficiaries, is that lawyer's discharge of her or his duty to these "secondary clients" could very well lead to the breach of the lawyer's duties of loyalty to the lawyer's "primary client," in this case the Fund. In fact, such is the case here.

For instance, Intervening Plaintiffs implicitly admit that the majority of the Fund's board of the trustees approved payment under the Agreement on March 23, 2007. (Second Amended Complaint, ¶ 161.) Under Michigan Rule of Professional Conduct 1.3 (and the Fund's Declaration and Agreement of Trust), Sullivan Ward is obligated to honor the choices of the

---

[6] "'Duty' is an expression of the policy considerations that lead the law to say that the plaintiff is entitled to protection." *Simko*, 506 N.W.2d at 259 (citing *Buczkowski v. McKay*, 490 N.W.2d 330, 333 (Mich. 1992)). "The mere fact that something is foreseeable does not impose a duty on [an attorney]." *Id.* A factor to be considered when determining whether a duty exists is "the burdens and consequences of imposing a duty and the resulting liability for breach." *Id.*

Fund's "highest authority"; i.e., the majority of the board of trustees.  If Sullivan Ward discharged the alleged duty owed to Intervening Plaintiffs, *i.e.*, if it refused to honor the majority of the board's decisions regarding the Agreement, Sullivan Ward's performance of that duty would defeat its client's objective, as determined by the Fund's "highest authority."  That, in turn, would directly conflict with the Michigan Supreme Court's direction in Mich. R. Prof. Conduct 1.13(a)—that a lawyer retained to represent an organization represents the organization as distinct from its other constituents—and would contravene Michigan law.

    **c.**    <u>Analogous case law.</u>

    *Prentis v. Barbara Ann Karmanos Cancer Institute and Honigman, Miller, Schwartz & Cohn,* 698 N.W.2d 900 (Mich. App. 2005), *lv den* 703 N.W.2d 816 (Mich. 2005)*,* is apposite to this case.   In *Prentis*, defendant Honigman Miller Schwartz & Cohn ("Honigman") represented the defendant cancer center regarding an endowment agreement between the center and the plaintiff charitable foundation.  *Id.* at 906.  Under the endowment agreement, the center's name was supposed to be changed to memorialize the Meyer L. Prentis name.  That, however, failed to happen.  *Id.* at 907.  Plaintiff charitable foundation filed suit, alleging that Honigman owed the charitable foundation a duty to make sure the cancer center's name was changed in compliance with the endowment agreement.  The trial court dismissed that claim as a matter of law; the Michigan Court of Appeals affirmed.  *Id.* at 906-907.

    In affirming, the Michigan Court of Appeals observed that, under Michigan law, a non-client can claim a fiduciary relationship with (and corresponding duty owed by) a lawyer only if non-client's "placement of trust, confidence, and reliance [is] reasonable, and placement is <u>un</u>reasonable if the interests of the client and nonclient are adverse <u>or even potentially adverse</u>." *Id.* at 906 (citation omitted) (underlining added).  The Court then observed that, under Michigan law, when a lawyer represents a corporate organization, it does not represent the shareholders.

*Id.* at 907. Based on those two principles, the Court held that "plaintiff failed to demonstrate that [Honigman] owed it an independent fiduciary duty." *Id.* (citation omitted).

Here, as in *Prentis*, Sullivan Ward represented an organization, the Fund. Like the plaintiffs in *Prentis*, it is unreasonable for Intervening Plaintiffs to claim a fiduciary relationship with or a duty owed to them by Sullivan Ward. Intervening Plaintiffs are 3 of the 5,000+ Fund participants and beneficiaries. As detailed above, there could be numerous potential conflicts between the Fund's interests and the interests of each or all of the 5,000+ Fund participants and beneficiaries. As also detailed above, Intervening Plaintiffs' interests are actually adverse to the interests of the Fund, the client. *Prentis* thus dictates that Sullivan Ward owed no duty to Intervening Plaintiffs or to the other 5,000+ participants and beneficiaries.

On strikingly similar facts as those in this case, the Oklahoma Court of Appeals arrived at the same conclusion. In *Whitehead v. Rainey, Ross, Rice & Binns,* 997 P.2d 177 (Okla. Civ. App. 1999) **(Exhibit 1)**, plaintiffs were, similar to the Intervening Plaintiffs, current and former ERISA retirement plan beneficiaries. *Id.* at 178. Like the Intervening Plaintiffs, they filed suit against a plan's attorneys, alleging that the attorneys breached their duty to plaintiffs by providing negligent advice. *Id.* at 179. The Oklahoma Court of Appeals affirmed the trial court's dismissal of plaintiffs' complaint for failure to state a claim, because no attorney-client relationship existed between plaintiffs and the attorneys. *Id.* at 181.

The Court found no authority, state or federal, for the proposition that an attorney's representation of a plan gives rise to an attorney-client relationship with plan beneficiaries, other than for whether the attorney-client privilege prevents beneficiaries from obtaining discovery about the administration of the plan. *Id.* at 179-180. Here, Intervening Plaintiffs are not seeking discovery regarding the administration of the Fund. Instead, like the *Whitehead* plaintiffs, they

allege that an attorney, Sullivan Ward, provided negligent representation.  Like the plaintiffs in *Whitehead*, Intervening Plaintiffs fail to state a claim for which relief can be granted.

### d.     <u>This is not the rare exception to the attorney-client relationship rule.</u>

Nor can Intervening Plaintiffs successfully argue that this is the rare exception under Michigan law where an attorney owes a duty to a non-client—even ignoring the fact that Intervening Plaintiffs have not pleaded such a duty.  Again, the existence of duty is a question of law.  *Simko,* 532 N.W.2d at 846 (citation omitted).  Under Michigan law, there are only two circumstances in which an attorney owes a duty to a non-client.  One circumstance is where, which is not even alleged by Intervening Plaintiffs, a non-client can establish the elements of an equitable subrogation claim, *Atlanta Int'l*, 475 N.W.2d at 297-98; *Beaty*, 517 N.W.2d at 720.[7]

The other and classic circumstance of this rare, Michigan-law exception, is the situation where an attorney drafts a will for a client as in *Mieras*.  But *Mieras* holds that an attorney owes only a "narrowly circumscribed" duty of care to a <u>named</u> will beneficiary: to draft the will to accomplish the client's intent for distributing property to the <u>named</u> beneficiary.  *Mieras,* 550 N.W.2d at 212.

This, is not an analogous situation.  Here, Intervening Plaintiffs are not named in the Agreement.  Moreover, under the Agreement, the Fund engaged Sullivan Ward simply to represent the Fund in its claims against Watson Wyatt.  Thus, unlike in *Mieras*, Sullivan Ward owed no duty to non-clients (the Intervening Plaintiffs and/or the 5,000+ participants and beneficiaries).  In fact, *Mieras* prohibits a finding of such a duty, because, as detailed above, "it could create a conflict of interest that would derail 'the attorney's unswerving duty of loyalty or representation to the client [the Fund].'"  *Id.* at 211 (quoting *Atlanta Int'l*, 475 N.W.2d at 296).

---

[7] Equitable subrogation is a legal fiction through which one person, who pays the debt of another, is substituted to the rights and remedies of the person for whom the debt was paid.  *Auto-Owners Ins. Co. v. Amoco Prod. Co.*, 658 N.W.2d 460, 464 (Mich. 2003) (citation omitted).

Further, Intervening Plaintiffs admit that, like the will for the client in *Mieras*, the Agreement appropriately fulfilled the Fund's intent. As Intervening Plaintiffs repeatedly allege in the second amended complaint, the Agreement was executed on behalf of the Fund on January 20, 2005, to control Sullivan Ward's litigation of the *Watson Wyatt* lawsuit. In that lawsuit, Sullivan Ward appropriately fulfilled the Fund's intent by achieving a $110,000,000 settlement for the Fund. Intervening Plaintiffs concede this fact: they do not seek to set aside the $110,000,000 settlement. Indeed, in their motion to intervene in the underlying lawsuit, Intervening Plaintiffs expressly requested the Court not to disturb the $110,000,000 settlement. (See Docket No. 138-2, p. 2, Synopsis of Motion.) Like the will for the client in *Mieras*, the Agreement appropriately fulfilled the Fund's intent, and Intervening Plaintiffs cannot maintain a malpractice claim against Sullivan Ward. *Mieras*, 550 N.W.2d at 215.

In addition, any contention by Intervening Plaintiffs that Sullivan Ward's services in the *Watson Wyatt* lawsuit were provided for the 5,000+ participants, thereby making them third-party beneficiaries, misses the mark. While participants arguably may have an "indirect" beneficial interest in the Agreement, such an interest is not enough to confer third-party beneficiary standing. For instance, in their reply brief to Sullivan Ward's brief opposing their motion for leave to amend, Intervening Plaintiffs cited *Stillman*, *supra*, to claim they are "direct" beneficiaries of Sullivan Ward's services. But it is undisputed that the money sought in this lawsuit would not be delivered directly to Intervening Plaintiffs or other Fund participants. It would be delivered to the Fund. See *Register v. PNC Fin. Servs. Group, Inc.*, 477 F.3d 56, 61 (3d Cir. 2007) (noting that participants have no claim to any particular asset that composes a part of a plan's general asset pool). Thus, this is not a case where the Intervening Plaintiffs are the "direct" beneficiaries of money, which was the dispositive factor for the *Stillman* court (which

concluded that there was third-party beneficiary standing for individual plaintiffs to whom funds were to be paid directly).[8]

For the above reasons, Intervening Plaintiffs' legal malpractice claim, Count III(1), and claims that Sullivan Ward violated unidentified Rules of Professional Conduct, Sections E and H of Count II, fail under Fed. R. Civ. P. 12(b)(6) and should be dismissed with prejudice.

**IV.    Intervening Plaintiffs' Common Law Breach of Fiduciary Duty Claim (Count III(2)) Fails Because (1) It is Preempted by ERISA, (2) Intervening Plaintiffs Lack Standing, and (3) the Claim is Barred by the "No Duplication Rule."**

On the heels of Count III(1) of the second amended complaint, for legal malpractice, Intervening Plaintiffs assert a breach of common law fiduciary duty claim against Sullivan Ward, Count III(2). That count fails to state a claim for at least three reasons. First, even if Intervening Plaintiffs had standing to assert a common law breach of fiduciary duty claim against Sullivan Ward, and they do not, "[c]ommon law breach of fiduciary duty claims are clearly preempted by ERISA." *Smith v. Provident Bank*, 170 F.3d 609, 613, 615 (6th Cir. 1999).

Second, while an attorney owes a fiduciary duty to his client, *Portage Aluminum Co. v. Kentwood Nat'l. Bank*, 307 N.W.2d 761, 763 (Mich. App. 1981), for the reasons discussed above, Intervening Plaintiffs do not have an attorney-client relationship with Sullivan Ward; thus, Intervening Plaintiffs lack standing to assert a common law breach of fiduciary duty.

---

[8] In their reply to Sullivan Ward's brief opposing leave, Intervening Plaintiffs also cited two other cases for their contention that Fund participants were Sullivan Ward's clients. Specifically, Intervening Plaintiffs cited the following from *Everett v. USAir Group, Inc.*, 165 F.R.D. 1, 4 (D. D.C. 1995): "[A] plan administrator cannot assert the attorney-client privilege to protect communications relating to plan administration from disclosure to the trust's beneficiaries because the beneficiaries are the true clients." Unlike in *Everett*, Sullivan Ward has not withheld any documents or other information in the underlying *Watson Wyatt* lawsuit on the basis of attorney-client privilege. Intervening Plaintiffs cited the following from *Washington-Baltimore Newspaper Guild v. Washington Star Co.*, 543 F. Supp. 906, 909 (D. D.C. 1982): "When an attorney advises a fiduciary about a matter dealing with the administration of an employees' benefit plan, the attorney's client is not the fiduciary personally, but, rather, the trust's beneficiaries." Unlike *Washington-Baltimore Newspaper Guild* (as well as *Everett*), plan administration was not involved here. Instead, Sullivan Ward provided advice to the Fund for its suit against its former actuary, Watson Wyatt. Litigation is not plan administration. In short, as noted by the Oklahoma Supreme Court in *Whitehead*, 997 P.2d at 179-180, there is no authority, state or federal, for the proposition that an attorney's representation of a plan gives rise to an attorney-client relationship with plan beneficiaries.

Third, where an "alleged duty arises out of [an attorney-client] relationship, the tort claim is one for malpractice and malpractice only." *Barnard v. Dilley*, 350 N.W.2d 887, 888 (Mich. App. 1984). Applying this "non-duplication" rule, Michigan courts consistently dismiss other types of tort claims that seek to challenge the same services, including, as alleged here by Intervening Plaintiffs, breach of common law fiduciary duty claims. See *Melody Farms, Inc. v. Carson Fischer, P.L.C.*, 2001 WL 740575 at *5 (Mich. App. Feb. 16, 2001). See also *Sharma v. Giomarco*, 2004 WL 2176786 (Mich. App. Sept. 28, 2004); *Danou v. Cummins, McClorey, Davis & Acho, P.L.C.*, 2006 WL 120369 (Mich. App. Jan. 17, 2006); *Alken-Ziegler v. Bearup*, 2006 WL 572571 (Mich. Ct. App. Mar. 9, 2006); *Pukke v. Hyman Lippitt, P.C.*, 2006 WL 1540781 (Mich. App. June 6, 2006).

**V.      Intervening Plaintiffs' Claims Based on Sullivan Ward's Alleged "Fiduciary" Status (Counts II(G), IV, and V) Fail To State a Claim Because Sullivan Ward Is Not a Fiduciary and the Claims Do Not Satisfy Rule 8 Pleading Requirements**

In Counts IV and V of the second amended complaint, Intervening Plaintiffs allege that Sullivan is a Fund <u>fiduciary</u> and, as such, violated certain fiduciary duties and ERISA's prohibition against transactions between a Fund and a fiduciary. Similarly, in Count II(G), Intervening Plaintiffs seek a declaration voiding the Agreement as a prohibited transaction under ERISA by an ERISA <u>fiduciary</u> (in fact, Intervening Plaintiffs' allegations in Count II(G) are identical to those in Count IV of the second amended complaint). All of these claims are premised on Intervening Plaintiffs' allegation that Sullivan Ward is a fiduciary under ERISA. Because Sullivan Ward is not an ERISA fiduciary, Counts II(G), IV, and V fail to state a claim.

**a.      The general rule is that an attorney is not a fiduciary.**

"[T]o prevail on a claim for a breach of fiduciary duty under ERISA, a plaintiff must prove (1) that defendants are plan fiduciaries; (1) that defendants breached their fiduciary duties;

16

and (3) that their breach caused harm to the plaintiffs." *Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 639 (7th Cir. 2007). Section 3(21) of ERISA defines a fiduciary as one who

> (i) [ ] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) [ ] renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) [ ] has any discretionary authority or discretionary responsibility in the administration of such plan. [29 U.S.C. § 1002(21)(A).]

An attorney "performing [the attorney's] usual professional functions will ordinarily not be considered [a] fiduciary" under ERISA. 45 C.F.R. § 2509.75-5 (D-1). Thus, as a general rule, attorneys are not fiduciaries. See *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325 (3d Cir. 2004); *Hatteberg v. Red Adair Co., Inc. Employees' Profit Sharing Plan and its Related Trust*, 79 Fed.Appx. 709 (5th Cir. 2003); *S. Ill. Carpenters Welfare Fund v. Carpenters Welfare Fund of Ill.*, 326 F.3d 919 (7th Cir. 2003); *Custer v. Sweeney*, 89 F.3d 1156 (4th Cir. 1996); *S. Council of Indus. Workers v. Ford*, 83 F.3d 966 (8th Cir. 1996); *Useden v. Acker*, 947 F.2d 1563 (11th Cir. 1991); *Yaseta v. Baima*, 837 F.2d 380 (9th Cir. 1988); *Nieto v. Ecker*, 845 F.2d 868 (9th Cir. 1988); *Vest v. Gleason & Fritzshall*, 832 F.Supp. 1216 (N.D. Ill. 1993); *N. Y. State Teamsters Council Health and Hosp. Fund v. Estate of DePerno*, 816 F.Supp. 138 (N.D. N.Y. 1993); *Anoka Orthopaedic Assocs., P.A. v. Mutschler*, 709 F.Supp. 1475 (D. Minn. 1989)

### b.    The facts alleged are "professional functions," which do not render Sullivan Ward a fiduciary.

"ERISA's careful allocation of fiduciary liability is consonant with the statute's 'clear purpose' of ensuring ERISA plans 'access to ordinary legal advice.'" *Custer*, 89 F.3d at 1162 (quoting *Useden*, 947 F.2d at 1577). "[A]n attorney rendering professional services to a plan is not a fiduciary so long as he does not exercise any authority over the plan in a manner other than by usual professional functions." *Nieto*, 845 F.2d at 870. Also, negligent performance of those

17

professional functions "does not create ERISA fiduciary status." *Custer*, 89 F.3d at 1162 (citing *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 538 (7th Cir. 1991)); *Nieto*, 845 F.2d at 870.

In acting as the Fund's attorney, Sullivan Ward was not an ERISA fiduciary; it was merely providing legal services. All of the Intervening Plaintiffs' "factual" allegations fall within the "usual professional functions" of the Fund's counsel. See Second Amended Complaint, ¶¶ 228d-k; 268d-j; 271a-i, m, o-q; and 278. In sum, those allegations are that Sullivan Ward investigated the *Watson Wyatt* lawsuit and filed it without authority, incurred expenses in the lawsuit without <u>prior</u> approval, settled the case without <u>prior</u> approval, and rejected Watson Wyatt settlement demands without advising the Fund. At best, Intervening Plaintiffs allege negligent performance by Sullivan Ward of its professional functions as Fund counsel. The allegations do not establish that Sullivan Ward is fiduciary as defined in ERISA Section 3(21). Instead, Intervening Plaintiffs conflate "control of the management of litigation" with "control of the management of the Fund."

*Laborers' Pension Fund v. Arnold*, 2001 WL 197634 (Feb. 27, 2001 N.D. Ill) (**Exhibit 2**) is analogous. There, the court dismissed an ERISA breach of fiduciary duty claim brought by plans against their former general counsel and collections counsel, based upon similar allegations as those of the Intervening Plaintiffs. The plaintiffs in *Arnold* alleged "that Arnold exercised discretion when he compromised claims without the express consent and authorization of the Trustees and that he took on a fiduciary role when he misinformed the Trustees about his activities, thereby inducing the Trustees to make judgments based on inaccurate information." *Id.* at *3. The Northern District of Illinois dismissed the plaintiffs' claim for breach of fiduciary duty concluding, "[t]he Funds expect to impute ERISA liability on an attorney who was merely

providing legal services, but the law does not contemplate such a broad reading of the statute, even if allegations of malpractice are involved." *Id.*

Similarly, Intervening Plaintiffs' fiduciary duty claims should be dismissed because Sullivan Ward was merely providing legal services to the Fund, the provision of which does not fall within the scope of ERISA fiduciary liability. As noted, in *Iqbal*, the United States Supreme Court held that a court reviewing a motion to dismiss should "draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. 1950. Here, ERISA regulations, ERISA's interpretative case law, and "judicial experience and common sense" all dictate that the "facts" alleged by Intervening Plaintiffs (Second Amended Complaint, ¶¶ 228d-k; 268d-j; 271a-i, m, o-q; and 278) do not show exercise of discretion. Rather, they are descriptors of legal services that Sullivan Ward provided for the *Watson Wyatt* lawsuit, and all fall within the usual professional functions of Fund counsel, which do not qualify Sullivan Ward as an ERISA fiduciary. 45 C.F.R. § 2509.75-5 (D-1).

### c.    Intervening Plaintiffs' remaining allegations are legal conclusions.

To survive a motion to dismiss, a

> "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under a viable legal theory." Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. Even under Rule 12(b)(6) a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient. The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face."

*Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Mezobov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005), *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544 (2007)).

Here, the remaining allegations that Intervening Plaintiffs assert in their to attempt to make Sullivan Ward a fiduciary are conclusory statements of law that do not satisfy Rule 8's

pleading requirements.  For instance, Intervening Plaintiffs do nothing more than quote ERISA

§ 3(21)'s definition of fiduciary in alleging that Sullivan Ward:

> Exercised discretionary authority and/or discretionary control regarding the management of the Fund, Second Amended Complaint, ¶¶ 228(a) and 268(a).

> Exercised authority and/or control respecting the management or disposition of the Fund's assets, *id.*, ¶¶ 228(b) and 268(b).

> Had discretionary authority and/or discretionary responsibility in the administration of the plan, *id.*, ¶¶ 228(c) and 268(c).

See also Second Amended Complaint, ¶¶ 269; 270; 271j-l, n, r, and s; 274.  All such allegations

are "legal conclusions masquerading as factual allegations," which do not satisfy the pleading

requirements under Rule 8(a).  *Bishop v. Lucent Tech., Inc.*, 520 F.3d at 519.

Moreover, because the specific allegations Intervening Plaintiffs pleaded do not establish

that Sullivan Ward is a fiduciary under ERISA, Intervening Plaintiffs have "not 'nudged [their]

claims' [of breach of fiduciary duty] 'across the line from conceivable to plausible.'"  *Iqbal*, 129

S. Ct. at 1950-51 (quoting *Twombly*, 540 U.S. at 570).  Accordingly, Intervening Plaintiffs'

claims in Counts II(G), IV, and V, which are premised on their allegation that Sullivan Ward is

an ERISA fiduciary, fail to state a claim.

## Conclusion

Based on the above, Sullivan Ward requests that the Court grant Sullivan Ward's motion

and dismiss all six new counts against Sullivan Ward under Fed. R. Civ. P. 12(b)(6).

Dated: August 20, 2009

/s/    Jon R. Muth
Jon R. Muth (P18138)
MILLER JOHNSON
Attorneys for Anthony Asher, Michael J. Asher and
   Sullivan, Ward, Asher and Patton, P.C.
250 Monroe N.W., Suite 800
Grand Rapids, Michigan 49503
616.831.1700
muthr@millerjohnson.com

20

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2009, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

| | | |
|---|---|---|
| John A. Streby (P26397) | Harvey Kruse, P.C. | Michael A. Alaimo (P29610) |
| Attorney for Plaintiffs | Barry B. Sutton (P48761) | MILLER CANFIELD PADDOCK |
| 444 Church Street, Suite 201 | Milton S. Karfis (P55673) | & STONE |
| Flint, Michigan 48502 | Attorneys for Intervenor George | Attorneys for Trustees Hamric, |
| 810.767.2700 | Young | Edwards, Gleason, Gulick, Walker, |
| johnstreby@sbcglobal.net | 1050 Wilshire Drive, Suite 320 | Jr., Ellul, and Rogers |
| | Troy, MI 48084 | 150 W. Jefferson Ave., Suite 2500 |
| | (248) 649-7800 | Detroit, Michigan 48226 |
| | bsutton@harveykruse.com | (313) 496-8447 |
| | mkarfis@harveykruse.com | Alaimo@millercanfield.com |

I also hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:  None.

/s/        Jon R. Muth

Jon R. Muth (P18138)
MILLER JOHNSON
Attorneys for Anthony Asher,
Michael J. Asher and Sullivan,
Ward, Asher and Patton, P.C.
250 Monroe N.W., Suite 800
Grand Rapids, Michigan 49503
616.831.1700
muthr@millerjohnson.com