UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IRON WORKERS LOCAL 25 PENSION
FUND, et al.,

          Plaintiffs,

v.

WATSON WYATT AND COMPANY,

          Defendant.

Case No. 04-cv-40243
Consolidated with 07-cv-12368

HONORABLE STEPHEN J. MURPHY, III

_____/

## OPINION AND ORDER GRANTING IN PART, DENYING IN PART, DEFENDANT SULLIVAN WARD'S MOTION TO DISMISS (docket no 312), AND DENYING TRUSTEE DEFENDANTS' MOTIONS TO DISMISS (docket no. 313)

### INTRODUCTION

On August 11, 2009, the Court granted Intervening Plaintiffs' ("Plaintiffs") motion for leave to file a second amended complaint (docket no. 309). The following day, Plaintiffs filed their second amended complaint naming as defendants Anthony Asher, Michael J. Asher, and Sullivan, Ward, Asher and Patton, P.C. (known collectively herein as "Sullivan Ward") and James Hamric, James Edwards, Patrick Gleason, Steven Gulick, D. James Walker, Jr., Art Ellul, and J. Michael Rogers (known collectively herein as "Trustee Defendants"). On August 20, 2009, Sullivan Ward and Trustee Defendants each moved, in separate filings, to dismiss some of the counts asserted in the amended complaint lodged exclusively against Sullivan Ward (docket nos. 312 & 313, respectively). Trustee Defendants simply echo the arguments made by Sullivan Ward in its motion.

As a threshold matter, Plaintiffs argue that Trustee Defendants lack standing to seek dismissal of these counts since the counts are not aimed at Trustee Defendants. Plaintiffs

cite a number of cases for the proposition that a co-defendant lacks standing to move for dismissal of a claim against another party. *See* Pl. Resp. to Trustee Def. Mot. to Dismiss, pp. 6-7. Trustee Defendants counter that they have standing because the complaint "implicates the rights and interests of Trustee Defendants in several significant ways," including the possibility of co-fiduciary liability against Trustee Defendants if the Court finds Sullivan Ward as fiduciaries.

The Court finds that the Trustee Defendants in fact do lack standing to challenge the claims lodged solely against Sullivan Ward. Trustee Defendants' argument regarding the possibility of "co-fiduciary duty" is not persuasive because each count those defendants seek to have dismissed is aimed solely at Sullivan Ward, and not Trustee Defendants as a co-fiduciary. The Court therefore denies Trustee Defendants' motion to dismiss in its entirety. *See E.E.O.C. v. Brooks Run Min. Co., LLC*, No. 08-00071, 2008 WL 2543545 (S.D.W. Va. June 23, 2008) (citing *Mantin v. Broadcast Music, Inc.*, 248 F.2d 530, 531 (9th Cir. 1957) (noting that it is generally accepted that parties lack standing to seek dismissal of parties other than themselves). The Court notes that the practical effect of denying Trustee Defendants' motion is *de minimus* because the motion simply echoes the arguments asserted by Sullivan Ward, which arguments the Court fully considers below.

## FACTS AND PROCEDURAL HISTORY

The instant action is ancillary to another action before the Court (*Iron Workers Local 25 Pension Fund v. Watson Wyatt*, case no. 04-40243, herein referred to as the "*Watson Wyatt*"). The two cases were consolidated into the *Watson Wyatt* lawsuit. Docket no. 187. The facts of *Watson Wyatt* give rise to the present action.

The Iron Workers Local 25 Pension Fund ("Fund") provides pension benefits to more

2

than 5,000 participants and beneficiaries.  Second Amend. Compl.  ¶¶ 19, 20.  The Board

of Trustees of the Fund is comprised of six trustees.  *Id.* ¶ 22.  The law firm of Sullivan,

Ward, Asher, and Patton. P.C. was fund counsel for decades and mainly provided advice

concerning the negotiation and content of legal service provider and service provider

agreements, although at times it would handle certain litigation on behalf of the Fund.

Sullivan Ward was paid on an hourly basis.  *Id.* ¶¶ 24-32.

At some time during the representation of the Fund, Sullivan Ward contracted with

Watson Wyatt, a service provider, to perform actuarial services for the Fund.  *Id.* ¶ 36.  The

contract was terminated in 2003.  *Id.* ¶ 39.  Prior to its termination, however, Watson Wyatt

revealed to Sullivan Ward that the pension plan was not performing as well as previously

indicated, and was underfunded.  *Id.* ¶ 40.  In response, Sullivan Ward began investigating

Watson Wyatt for possible actuarial negligence without prior approval from the Fund

trustees.  *Id.* ¶ 41.  In its research, the law firm found two other actuarial negligence cases,

one of which involved Watson Wyatt.  *Id.* ¶¶ 43, 44.  Sullivan Ward decided to sue Watson

Wyatt and determined the Fund would claim damages exceeding $100 million.  *Id.* ¶ 45.

On April 14, 2004, Sullivan Ward sued Watson Wyatt, but the case was later

dismissed for failure to plead a basis for federal jurisdiction.  *Id.* ¶ 46.  One month later, at

a trustee meeting, Sullivan Ward and the trustees discussed the handling of the Watson

Wyatt litigation, including the alteration of the legal service agreement.  *Id.* ¶¶ 48, 49.  Two

options were proposed: hourly and contingency arrangements.  *Id.* ¶ 56.  A new agreement

was allegedly made at that meeting.

Sullivan Asher later re-filed suit on behalf of the Fund against Watson Wyatt in July

2004.  *Id.* ¶ 70.  Subsequently, in November 2004, Sullivan Ward drafted a new legal

agreement for the Fund that included a mixed-fee arrangement, which provided that the Fund would pay all costs as incurred, and Sullivan Ward would be paid an hourly fee up to $250,000, after which time, a one-third contingency arrangement would apply. The agreement was retroactive to May 2004, just after the initial Watson Wyatt lawsuit was filed. *Id.* ¶¶ 74, 75. Sullivan Ward continued to bill the Fund for other legal services unrelated to the Watson Wyatt litigation during the time in question. *Id.* ¶ 76.

Plaintiffs allege numerous problems with the new legal services arrangement. First, they allege, the fact it was drafted by Sullivan Ward, who was fund counsel at the time, gives rise to a conflict, *Id.* ¶ 80, because allegedly part of the law firm's duties as fund counsel was to recommend and negotiate with service providers for services such as litigation on behalf of the Fund. Additionally, in discussing the mixed fee arrangement, Sullivan Ward used the figure of $2 million as the potential recovery from Watson Wyatt, although it allegedly knew recovery could possibly exceed $100 million. *Id.* ¶ 78. Furthermore, Sullivan Ward had another conflict in the representation, in that it could potentially become a defendant in the Watson Wyatt litigation because Watson Wyatt was claiming that Sullivan Ward, as fund counsel, was wholly or partially responsible for the claims asserted against Watson Wyatt. *Id.* ¶¶ 88-91.

On January 11, 2007, Sullivan Ward rejected, without first communicating to the trustees, an offer to settle the Watson Wyatt litigation in the amount of $110 million. *Id.* ¶ 148. The offer was allegedly rejected because according to the proposed settlement, Watson Wyatt would be granted subrogation rights to bring suit against Sullivan Ward. *Id.* ¶ 149. Then on January 19, 2007, Sullivan Ward settled the case for $110 million, without the trustees' authorization. *Id.* ¶ 150. Sullivan Ward did not inform the trustees of the

settlement until March 23, 2007. *Id.* ¶ 154. Sullivan Ward went so far as to file a motion to enforce the settlement before telling the trustees or Fund participants that the case was settled. *Id.* ¶ 153.

When Sullivan Ward finally advised the trustees that the case had been settled, over two months after settlement, it did so in a way that prevented the trustees from reviewing the settlement agreement in a meaningful way. *Id.* ¶ 154. Sullivan Ward allegedly threatened one of the trustees, George Young, with personal liability because Young had hired his own attorney to advise him concerning his own fiduciary responsibilities, and potentially jeopardized the settlement. *Id.* ¶¶ 156-57. At the meeting, five of the six trustees approved the settlement by signing a resolution. *Id.* ¶ 159. The resolution did not address the legal services agreement, which entitled Sullivan Ward to a $36 million contingency award. *Id.*

On April 16, 2007, Mr. Young and two other participants and/or beneficiaries of the plan, Mr. Weglarz and Mr. Chakur, filed a motion to intervene in the Watson Wyatt case and to prevent the disbursement of the contingency fee to Sullivan Ward. *Id.* ¶ 163. A hearing was held before Judge Gadola, who was made aware for the first time that Sullivan Ward was seeking $36 million in attorneys' fees. The Court ordered the purported fee be placed in an interest-bearing account for later disbursement by this Court. *Id.* ¶ 164.

In June 2007, Bart Carrigan, a former trustee, filed a separate legal action against Sullivan Ward under ERISA and Michigan law seeking to abrogate the legal services agreement with the Fund. He was terminated in his position as trustee and the case was dismissed for lack of standing. *Id.* ¶ 165. In June 2007, Plaintiffs filed their complaint seeking similar relief. In December 2007, Plaintiffs filed their amended complaint, which

the Court consolidated with the underlying Watson Wyatt case.  *Id.* ¶ 167.  The instant

complaint was then filed on August 20, 2009.

## DISCUSSION

### I.  Legal Standard - Motion to Dismiss under Rule 12(b)(6)

"[W]hen the allegations in a complaint, however true, could not raise a claim of

entitlement to relief, 'this basic deficiency should . . .  be exposed at the point of minimum

expenditure of time and money by the parties and the court.'"  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 557 (2007) (citations omitted).  Accordingly, Federal Rule of Civil Procedure

12(b)(6) allows a defendant to test whether, as a matter of law, the plaintiff is entitled to

legal relief even if everything alleged in the complaint is true.  *See Minger v. Green*, 239

F.3d 793, 797 (6th Cir. 2001) (citations omitted).

In assessing a motion brought pursuant to Rule 12(b)(6), the Court must presume

all well-pleaded factual allegations in the complaint to be true and draw all reasonable

inferences from those allegations in favor of the non-moving party.  *Bishop v. Lucent

Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).  To determine whether the plaintiff has

stated a claim, a court must consider only the complaint and any written instruments that

are attached as exhibits to the pleading. Fed. R. Civ. P. 12(b)(6); *see also* Rule 10©.

Although the pleading standard is liberal, bare assertions of legal conclusions will not

enable a complaint to survive a motion pursuant to Rule 12(b)(6). *In re DeLorean Motor

Co.*, 991 F. 2d 1236, 1240 (6th Cir. 1993). The Court will not presume the truthfulness of

any legal conclusion, opinion, or deduction, even if it is couched as a factual allegation.

*Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

The Federal Rules of Civil Procedure do not require a claimant to set out in detail

the facts upon which he bases his claim.  To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  Fed. R. Civ. P. 8(a).  This standard requires the claimant only to put forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the requisite elements of the claim]."  *Bell Atl. Corp.*, 550 U.S. at 556.  Thus, although "a complaint need not contain 'detailed' factual allegations, its '[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'"  *Ass'n of Cleveland Fire Fighters v. Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp.*, 550 U.S. at 555).  Therefore, the Court will grant a motion to dismiss pursuant to Rule 12(b)(6) only in cases where there are simply not "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570.

## II.  Analysis

A.    <u>Counts I (A-F, H) & II - Breach of Contract and Declaratory Relief</u>

Plaintiffs allege in Count I that Sullivan Ward breached the legal services agreement between it and the Fund.  Under the legal services agreement, the Fund agreed to pay Sullivan Ward at the "regular hourly rate" (partner: $150; associate: $125; paralegal: $55) up to a maximum of $250,000 and agreed to forward to the Fund invoices for costs and fees as they accrued.  Sullivan Ward stopped sending invoices from March 7, 2005 to November 17, 2006.  On November 17, 2006, it remitted the invoices for that period, but increased the rates for partners by $25 and paralegal by $20, thereby allegedly breaching the legal services agreement.  Plaintiffs also bring a claim for declaratory relief in Count II asking the Court to declare as void the legal services agreement on a number of grounds.

7

Sullivan Ward argues, in moving to dismiss Plaintiffs' claim for breach of contract and declaratory relief, that the claims fail because Plaintiffs lack standing to enforce the contract since Plaintiffs are not parties to the legal services agreement. Generally, one not a party to an agreement cannot pursue a claim for breach of the agreement or challenge its validity. *First Sec. Sav. Bank v. Aitken*, 226 Mich. App. 291, 305 (1997) (overruled on other grounds by *Smith v. Globe Life Ins. Co.*, 460 Mich. 446 (1999); *Stillman v. Goldfarb*, 172 Mich. App. 231, 238 (1988). According to Sullivan Ward, the agreement forming the basis of the claims for breach of contract and declaratory relief is between the Fund and Sullivan Ward; Plaintiffs are not a party to, or mentioned, in it.

Plaintiffs respond with three principal responsive arguments. First, they argue that under the narrow field of representation of ERISA funds, beneficiaries of the plan are the "true clients" and therefore, have standing to enforce the agreement. They cite no fewer than seventeen cases, none of which are from the Sixth Circuit, that purportedly stand for this proposition. *See* Pl. Resp. to Sullivan Ward's Mot. to Dismiss, pp. 4-5. Sullivan Ward counters that each of the cases cited deals with either an attorney rendering services in the context of "plan administration," or whether the attorney-client privilege can bar a beneficiary from obtaining information about the plan, both of which are not at issue in this case. The Court is not persuaded that the participants and/or beneficiaries are the "true clients" of Sullivan Ward such that the legal services agreement was if fact one between Sullivan Ward and the participants and/or beneficiaries. The agreement was between the Fund and Sullivan Ward. The Fund's participants and/or beneficiaries, as non-parties to the agreement, lack standing to enforce it and seek a declaration of its invalidity.

8

Second, Plaintiffs argue they have standing to enforce the legal services agreement as "derivative clients."  Under this theory, where an entity and its individual members share the same interest with respect to a third party in a particular matter or transaction, an attorney retained to protect that interest owes the members the same professional obligations he owes the entity.  The rule gives rise to the concept of the entity as the "primary" client and its members as "derivative" clients to whom an attorney also owes a special duty.  Plaintiffs do not cite mandatory authority for this rule, but rely instead on Hazard & Hodes, *The Law of Lawyering* (2d ed. 1990), a publication on professional conduct, and sister state and district court opinions, many of which *declined* to impose a duty on the attorney toward a "derivative client."  Under this theory, Plaintiffs argue that under the ERISA statutory scheme, which makes the trustees fiduciaries of the Fund, there is at least a "derivative client" relationship between Sullivan Ward and the beneficiaries and/or participants.

Sullivan Ward counters that imposing such a duty on an attorney toward a derivative client would contravene the Michigan Rules of Professional Conduct, Michigan case law, and would seriously undermine an attorney's duty of loyalty to his client.  The Court agrees that adoption of this "derivative client" theory would undermine settled law in Michigan regarding attorney-client conduct.  Rule 1.13(a) of the Michigan Rules of Professional Conduct provides that when a lawyer represents an organization, he or she does so distinct from its directors, officers, employees, members, shareholders, or other constituents. Imposing on Sullivan Ward a duty to represent the beneficiaries and/or participants as "derivative clients" to whom Sullivan Ward was responsible, would constitute a per se violation of Rule 1.13(a) and potentially create impermissible conflicts of interests for

Sullivan Ward. The Court will not engage in analysis that would create such a result.

Third, Plaintiffs argue they are entitled to enforce the agreements as third-party beneficiaries under M.C.L. § 600.1405. M.C.L. § 600.1405 provides, in pertinent part:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise had undertaken to give or to do or refrain from doing something directly to or for said person.

The use of the word "directly," indicates "the Legislature's intent to assure that contracting parties are clearly aware that the scope of their contractual undertakings encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract." *Koenig v. City of South Haven*, 460 Mich. 667, 676-77 (1999). Plaintiffs argue that even though not explicitly referenced in the legal services agreement, they are nonetheless third-party beneficiaries because beneficiaries in an ERISA plan are the "true clients" for work performed in administration of the Fund, and because ERISA beneficiaries are statutorily defined as direct and intended beneficiaries.

The argument is as follows. The legal services agreement states that the Fund is governed by ERISA. ERISA defines a "beneficiary" as "a person designated by a participant or by the terms of an [ERISA] plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). A "participant" is "any employee or former employee of any employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." *Id.* at § 1002(7). Therefore, Plaintiffs, as "participants" or "beneficiaries" of the Fund are expressly

10

included in the agreement by statutory reference.

Sullivan Ward counters that M.C.L. § 600.1405 clearly requires that a party must be directly referenced in a contract before he or she can enforce the contract, and since Plaintiffs are not directly referenced in the contract, they cannot enforce it. Furthermore, Sullivan Ward asserts, ERISA does not provide that fund participants or beneficiaries are *contractual* beneficiaries of the acts of a fund's service provider, which is the issue here. The Court agrees that Plaintiffs' claims are governed by the requirements of M.C.L. § 600.1405 as well as the interpreting case law that to obtain status as a third-party beneficiary for contract purposes, the purported third-party beneficiary must be *directly* referenced in the contract. Since Plaintiffs are not directly referenced in the legal services agreement, they cannot seek to enforce the contract as third-party beneficiaries.

From the foregoing requirements of Michigan law, it is clear that Plaintiffs do not have standing to bring claims for breach of contract (Count I) or declaratory relief relating to the contract (Count II (A-F, H)). Accordingly, these counts in Plaintiffs' second amended complaint will be dismissed.

2.    Legal Malpractice / Negligence Claims

Plaintiffs allege in Count III(1)[1] that Sullivan Ward has committed legal malpractice or negligence in its representation of the Fund. Sullivan Ward contends that Plaintiffs lack standing to bring these claims as well because they lack an attorney-client relationship with

---

[1] The complaint includes two headings of "Count III," likely the result of error. The first is titled "Sullivan Ward's Professional Negligence." The second is titled "Sullivan Ward's Common Law Fiduciary Duty." For purposes of clarity in this opinion, the legal malpractice / negligence claim is indicated "Count III(1)" and the common law fiduciary duty claim is indicated "Count III(2)."

Sullivan Ward and, therefore, are not owed a cognizable fiduciary duty.

To assert a legal malpractice claim, a plaintiff must first establish the existence of an attorney-client relationship giving rise to a duty to avoid negligent conduct. *See Simko v. Blake*, 448 Mich. 648, 655 (1995). Indeed, a cognizable duty exists as a matter of law if there is an attorney-client relationship. *Id.* Whether there is such a relationship is governed by principles of contract law. An attorney-client relationship cannot be created unilaterally; a putative client's unilateral or subjective belief is not sufficient to create the relationship. *Scott v. Green*, 140 Mich. App. 384, 400 (1985).

Sullivan Ward argues this count should be dismissed because there is no attorney-client relationship between Sullivan Ward and Plaintiffs, and otherwise no cognizable duty owed to the Plaintiffs. The Court agrees. The contractual agreement was between the Fund and the Sullivan Ward; not between the trustees, beneficiaries, or participants, on the one hand, and Sullivan Ward on the other. Plaintiffs have admitted this fact at various places in its complaint and there is no other basis alleged for establishing an attorney-client relationship. *See* Second Amend. Compl. ¶¶ 31, 33, 36, 48, 50, 52, 55, 76, 95, 95, 115, 240 (recognizing that Sullivan Ward acted as *Fund* Counsel, or that the legal service agreement was between the *Fund* and Sullivan Ward). Plaintiff George Young's status as a trustee at the time of the alleged malpractice does not change this analysis. The attorney-client relationship was one between the Fund, as a distinct legal entity, and Sullivan Ward. *See Toussaint v. James*, No. 01-10048, 2003 WL 21738974, at *8 (S.D.N.Y. July 25, 2003) ("Counsel for pension plans do not, *ipso facto*, become counsel for trustees, as a pension plan is considered a distinct legal entity and may sue or be sued in its own capacity.")

This result is fully consistent with the underlying justification for the attorney-client relationship requirement for bringing a malpractice claim. Generally, a malpractice claim can only be brought by a client, because it is the *client* to whom the attorney owes an undivided duty of loyalty. *Mieras v. DeBona*, 452 Mich. 278, 297-98 (1996). The requirement prevents conflicts with third parties from derailing the attorney's duty of loyalty of representation to the client. *Atlanta Int'l Ins. Co. v. Bell*, 438 Mich. 512, 519 (1991). Michigan courts, therefore, are reluctant to permit an attorney's actions that affect a non-client to be a predicate to liability because of the potential for conflicts of interest that could seriously undermine counsel's duty of loyalty to the client. *Beaty v. Hertzberg & Golden, P.C.*, 456 Mich. 247, 254 (1997).

In this case, if Sullivan Ward owed a duty to three of the 5,000 plus participants and beneficiaries, two problems would arise. First, it would be extremely difficult for the Sullivan Ward to identify and determine the scope of its duty. It would mean that *any* of the 5,000 plan members could sue Sullivan Ward. This would require that Sullivan Ward evaluate conflicts of interest for all 5,000 purported clients before signing the legal services agreement, which would be not be in the interests of the plan.

Second, an attorney's discharge of its duty to these "secondary clients" could very well lead to the breach of the attorney's duties of loyalty to the attorney's primary clients. In this case, for example, Sullivan Ward is obligated by the Michigan Rules of Professional Conduct to honor the choices of the Fund's "highest authority," *i.e.*, the majority of the board of trustees. *See* Mich. R. Prof. Conduct 1.13. If Sullivan and Ward discharged the alleged duty owed the Plaintiffs and refused to honor the majority of the board's decisions regarding the agreement, Sullivan Ward's performance of that duty would defeat the client's

13

objective as determined by the board of trustees. This would directly conflict with Michigan Rule of Professional Conduct 1.13(a) – that a lawyer retained to represent an organization represent the organization as distinct from its other constituents.

Sullivan Ward relies on *Prentis v. Barbara Ann Karmanos Cancer Institute, et al.*, 266 Mich. App. 39 (2005) (*per curiam*). In that case, the law firm of Honigman, Miller, Schwartz and Cohn ("Honigman") represented a cancer center in an endowment agreement between the center and the plaintiff charitable foundation. When the center's name was not changed to memorialize foundation's name, the foundation sued the center and Honigman alleging Honigman owed the foundation a duty to make sure the center's name was changed in compliance with the endowment agreement. *Id.* at 43.

The Michigan Court of Appeals affirmed dismissal of the claim observing that under Michigan law a non-client can claim a fiduciary relationship with an attorney only if the non-client's placement of trust, confidence, and reliance, is reasonable. *Id.* Placement of trust is not reasonable if the interests of the client and non-client are even potentially adverse. *Id.* at 44. It also recognized that when a lawyer represents a corporate organization, it does not represent the shareholders. Based on these principles, the court found the plaintiff failed to demonstrate Honigman owed it an independent duty of care. *Id.* at 45.

Here, since the representation of the beneficiaries of the fund could create a situation where the interest of the client and non-client are potentially adverse, the placement of trust in the attorney by the non-client would not be reasonable. The non-client Fund beneficiaries, therefore, cannot claim a fiduciary relationship.

Plaintiffs contend that *Prentis* is distinguishable since it did not deal with an ERISA fund, and because it involved issues of purported conflicts of interest that do not arise in

cases like the present one, when there could have been no conflicts between the client and non-client (since the sole purpose of the case was to return money to the Fund for the direct benefit of the beneficiaries and participants).  The Court, however, does not see the distinction.  There certainly could be conflicts of interest between Fund members and the Fund such that declining to impose a duty on Sullivan Ward is appropriate.  And this lawsuit is a prime example of such a conflict.

Finally, this case does not fit the "rare exception" to the attorney-client relationship that imposes a tort-based duty owed by an attorney to a non-client.  The singular example of this rare exception existed in *Mieras v. DeBona*, 452 Mich. 278 (1996), in which an attorney drafted a will for a client.  The court found that the attorney owed only a "narrowly circumscribed" duty of care to a named will beneficiary, *i.e.*, to draft the will to accomplish the client's intent for distributing property to the named beneficiary. But *Mieras* is not applicable in this case.  First, Plaintiffs are not named in the relevant document, *i.e.*, the legal services agreement, as was the case in *Mieras*, where the purported beneficiary of the will was explicitly named in the will.  Secondly, the agreement in this case fulfilled the Fund's request – to obtain recovery from Watson Wyatt –  unlike that in *Mieras*, where the will *did not* fulfill the testator's intent.

Plaintiffs also address *Mieras*, and argue that it applies to the facts here. Plaintiffs argue that the *Mieras* court found that when services rendered directly benefit the beneficiaries, the beneficiaries have standing to sue.  Therefore, since Plaintiffs are statutorily defined as intended beneficiaries, *Mieras* applies to impose a duty on Sullivan Ward in this case.  The Court declines this expansive reading of *Mieras*, which expressly held that "beneficiaries named in a will may bring a tort-based cause of action against the

15

attorney who drafted the will for negligent breach of the standard of care owed to the beneficiary *by nature of the beneficiary's third-party beneficiary status*." *Mieras*, 452 Mich. at 308. (emphasis supplied).  Plaintiffs again make the argument that ERISA makes plan participants third-party beneficiaries under contract law, which as the Court noted above, is not warranted by well-settled law.  Accordingly, the Court finds *Mieras* does not support Plaintiffs' argument, and the claim for legal malpractice / negligence will be dismissed.

3.    <u>Common Law Breach of Fiduciary Duty Claim</u>

In Count III(2), Plaintiffs claim Sullivan Ward breached its common law fiduciary duty owed to the Fund.  This count fails to state a claim.  Assuming Plaintiffs had standing to bring such a claim, which it does not, common law breach of fiduciary duty claims are clearly preempted by ERISA.  *See Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999).  The Court is not persuaded that the result should be different because the claim involves professional services rendered to an ERISA plan.

Additionally, Court III(2) fails to state a claim because Plaintiffs lack standing to enforce the fiduciary duty owed the Fund.  There is no attorney-client relationship between Plaintiffs and Sullivan Ward.  Consequently, no fiduciary duty is owed Plaintiffs that can be enforced by an action for breach of fiduciary duty, and Count III(2) will accordingly be dismissed.

4.    <u>Claims Based on Sullivan Ward's Status as a "Fiduciary" Under ERISA</u>

In Counts IV and V, Plaintiffs allege that Sullivan Ward, as fiduciary, violated certain fiduciary duties and ERISA's prohibition of transactions between a fund and a fiduciary.  Also, in Count II(G), Plaintiffs seek a declaration that the legal services agreement is void as a prohibited transaction by an ERISA fiduciary.  These claims rest on Sullivan Ward's

status as an ERISA "fiduciary." Sullivan Ward argues these claims fail to state a claim upon which relief may be granted because the claims are premised upon Sullivan Ward having status as an ERISA fiduciary, which it does not. Sullivan Ward also agues the counts do not satisfy pleading requirements under Fed. R. Civ. P. 8. The Court disagrees with both contentions.

A. *Lack of Fiduciary Status*

Sullivan Ward first argues that since it was not a fiduciary under ERISA, it cannot be liable for a breach of fiduciary duty claim under the statute. 29 U.S.C. § 1002(21)(A) provides:

> a person is a fiduciary with respect to a plan to the extent (I) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

"ERISA ... defines [a] 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan ... thus expanding the universe of persons subject to fiduciary duties ...." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (emphasis in original) (internal citation omitted). Attorneys performing their usual "professional functions" will ordinarily not be considered fiduciaries. *See* 29 C.F.R. § 2509.75-5(D-1). But, if the factual situation in a particular case falls within one of the categories listed in the statutory definition above, and the tasks performed transcend the usual scope of the professional-client relationship, those persons will be considered fiduciaries for ERISA purposes. *Id.; see Custer v. Sweeney*, 89 F.3d 1156, 1162 (4th Cir.

17

1996) ("But merely because a person serves as legal counsel to a pension plan does not automatically preclude a finding that the attorney is also an ERISA fiduciary, at least as to some activities.")  The determinative question is whether the person assumes a *de facto* control over fiduciary functions.  This determination is fact-intensive.  Discretionary control must be contrasted with negligent performance of professional functions, which by itself does not create ERISA fiduciary status.

Sullivan Ward asserts that the allegations in the complaint demonstrate merely that Sullivan Ward was performing its usual "professional functions" and therefore was not acting as an ERISA fiduciary.  It contends that the allegations that Sullivan Ward performed many acts without trustee approval demonstrate negligence at best, but do not establish fiduciary status.  The Court disagrees.  The allegations in the complaint pertaining to Sullivan Ward's conflict appear sufficient, if proved, to support a finding that Sullivan Ward was a "fiduciary" under ERISA and thus state a claim upon which relief can be granted.  Such allegations include that Sullivan Ward was provided a virtual open checkbook for expenses in the *Watson Wyatt* litigation, and more importantly that Sullivan Ward rejected, without first conferring with the Fund, a $110 million offer of settlement, later accepting a similar offer, and filing a motion to enforce the settlement, all without advising or obtaining approval of the Fund.  *See generally* Pl. Second Amend. Compl. ¶¶ 19-167.  The firm's conduct could never be considered "usual professional functions" because under Michigan Rule of Professional Conduct 1.4(a) the failure to notify the client of a settlement offer is prohibited.  An attorney with *carte blanche* authority to settle a case is more akin to a fiduciary with discretion over the clients assets, than an attorney performing the usual professional functions.  Therefore, whether Sullivan Ward exercised sufficient control over

18

the Fund is a question for the jury and not appropriate for dismissal under Rule 12(b)(6).

Sullivan Ward relies on *Laborers' Pension Fund v. Arnold*, 2001 WL 197634 (N.D. Ill. Feb. 27, 2001) for a contrary conclusion.  In *Arnold*, the district court dismissed the plaintiffs' ERISA breach of fiduciary duty claim finding the fund's former general counsel and collections counsel, Arnold, was not a "fiduciary" under § 1002(21)(A).  Plaintiffs claimed that Arnold "exercised discretion when he compromised claims without the express consent and authorization of the Trustees and that he took on a fiduciary role when he misinformed the Trustees about his activities, thereby inducing the Trustees to make judgments based on inaccurate information." *Id.* at *3.  Dismissing the claim, the court held that Arnold was merely providing legal services, even if he did so negligently, when he "unilaterally settled claims for less than their actual value, waived liquidated damages and interest charges on claims, and reduced subrogation claims – all without the knowledge or approval of the Trustees."  *Id.*  The court found that such actions did not demonstrate Arnold's "discretionary control" over the fund.  *Id.* at *6.

The Court does not find that *Arnold* forecloses a finding of fiduciary status, and is in fact distinguishable.  In *Arnold,* the court found that the plaintiffs' argument was foreclosed by a Ninth Circuit decision, *Nieto v. Ecker*, 845 F.2d 868, 870 (9th Cir. 1988), which is obviously not binding in the Sixth Circuit.  Second, *Nieto* and *Arnold* specifically involved "collections counsel," and the conduct alleged by the plaintiffs as demonstrative of discretionary control over the fund was germane to those types of "collections" counsel, such that they were acting ministerially, and not with discretion.  In this case, assuming the truth of the allegations, litigating, and finally settling, the *Watson Wyatt* lawsuit without the consent of the trustees exceeded the bounds of the functions Sullivan Ward was hired to

19

perform, *i.e.*, the provision of legal advice, and those acts thereby crossed the line from usual professional functions to discretionary control.

2. *Rule 8 Argument*

Sullivan Ward alternatively argues that the counts relating to fiduciary status do not comply with Rule 8 and the judicial gloss placed upon it by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 540 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Under that gloss, "[c]onclusory allegation or legal conclusions masquerading as factual allegations will not suffice. Even under Rule 12(b)(6), a complaint containing a statement of facts that merely creates a *suspicion* of a legally cognizable right of action is insufficient. The '[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must 'state a claim to relief that is plausible on its face.'" *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 540 U.S. 544 (2007)).

Sullivan Ward argues that the remaining allegations asserted in the complaint attempting to demonstrate Sullivan Ward's ERISA fiduciary status are conclusory statements of law that do not satisfy the pleading requirements of Fed. R. Civ. P. 8. Sullivan Ward references various sections in the complaint that merely quote ERISA's definition of a fiduciary. Sullivan Ward's argument, however, fails to credit many of the other allegations in the complaint which state facts, which if assumed true, as they must be on a Rule 12(b)(6) motion, are sufficient for presentation to the fact-finder on the question of whether Sullivan Ward was an ERISA fiduciary. The Court finds no conflict in the allegations of the complaint with current Supreme Court rulings relevant to Rule 8 and accordingly denies Sullivan Ward's motion to dismiss Counts II(G), IV and V.

20

**CONCLUSION AND ORDER**

The Court confronts a "mixed bag" in assessing Sullivan Ward's motion to dismiss new counts in the second amended complaint. Counts I and II, except for Count II(I) which Sullivan Ward does not move to dismiss, and Count II(G) which it does not challenge on the basis of standing, will be dismissed with prejudice since Plaintiffs are not party to the contract they seek to alternatively enforce and declare invalid.

Count III(1), claiming malpractice / professional negligence, will be dismissed with prejudice because Plaintiffs have not alleged an attorney-client relationship and an accompanying duty owed Plaintiffs on which a breach of that duty can be based.

Count III(2), claiming breach of common law fiduciary duty, will be dismissed with prejudice both because the claim is preempted by ERISA and because Sullivan Ward did not owe them a common law fiduciary duty.

Counts II(G), IV, and V survive Sullivan Ward's motion for dismissal. These claims are premised on the claim that Sullivan Ward was a "fiduciary" to the Fund, as that term is defined in ERISA. Sullivan Ward has not demonstrated that it was not a fiduciary as a matter of law. The conduct performed by Sullivan Ward, if proved as alleged in the complaint, goes beyond the "usual professional functions" of Fund counsel and would meet the definition of a "fiduciary" under ERISA, 29 U.S.C. § 1002(21)(A).

Furthermore, Trustee Defendants lack standing to challenge any of the counts in the complaint lodged exclusively against Sullivan Ward. Therefore, its motion to dismiss is denied in its entirely.

**WHEREFORE** it is hereby **ORDERED** that Defendant Sullivan Ward's Motion to Dismiss New Counts Alleged In Intervening Plaintiffs' Second Amended Complaint (docket

no. 312) is **GRANTED IN PART AND DENIED IN PART** as follows:

- Count I, Count II(A-F, H), Count III(1), Count III(2) are **DISMISSED with prejudice**.

- The remaining counts alleged in Plaintiffs' Second Amended Complaint, not dismissed by this order (Counts II(G, I), IV-IX), remain.

It is further **ORDERED** that Trustee Defendants' Motion to Dismiss (docket no. 313)

is **DENIED**.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated:  November 4, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 4, 2009, by electronic and/or ordinary mail.

s/Alissa Greer
Case Manager