UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re: IRON WORKERS
LOCAL 25 PENSION FUND.

Case No. 04-cv-40243
Consol. with case no. 07-cv-12368

HONORABLE STEPHEN J. MURPHY, III

_____/

## OPINION AND ORDER DENYING
## PARTIES' MOTIONS TO STRIKE (docket nos.
## 377, 381, 393, 395, 397, 398, 400, 401, 402, & 405)
## AND CROSS-MOTIONS FOR SUMMARY JUDGMENT
## (docket nos. 352, 361, 370, 373, & 374), AND GRANTING
## <u>SULLIVAN WARD'S MOTION TO STRIKE JURY DEMAND (docket no. 331)</u>[1]

In January 2007, Watson Wyatt & Company ("Watson Wyatt") agreed to settle the claims brought against it by the Iron Workers Local No. 25 Pension Fund ("Fund") and its board of trustees. Watson Wyatt agreed to pay $110 million in exchange for a full release of liability and dismissal of all claims with prejudice. Under the legal services agreement in place between the Fund and its counsel, Sullivan, Ward, Asher, & Patton, P.C. ("SWAP"), counsel was entitled to approximately $36 million of the $110 million settlement as its contingency fee.

At a hearing regarding the settlement, George Young, one of the Fund's trustees at the time, challenged the propriety of the contingency fee. He alleged that the fee was excessive and that the agreement permitting it was created while SWAP was under a conflict of interest. Young sought to intervene in the action to prevent the payment of the fee. After the hearing, with consent of the parties, the Court ordered the fee to be transferred to a separate savings account at SWAP's bank, and the funds placed in short-term treasury notes until the Court had an opportunity to rule on Young's motion to

---

[1] Citations to docket numbers refer to the docket in case no. 04-cv-40243.

intervene.

Shortly thereafter, Young, along with Harvey Weglarz and William Chakur, a participant (union member) and beneficiary (union retiree) of the Fund, respectively, ("Plaintiffs") filed a lawsuit against: 1) SWAP and Anthony and Michael Asher, two of the firm's attorneys ("Sullivan Ward"); and 2) James Hamric, James Edwards, Patrick Gleason, Steven Gulick, D. James Walker, Art Ellul, and J. Michael Rogers, trustees of the Fund at the time the fee agreement was negotiated and executed ("Trustees").  Plaintiffs alleged that Sullivan Ward breached its fiduciary duty and benefitted from a transaction prohibited by ERISA.[2]  They also alleged that Trustees breached their fiduciary duties imposed by ERISA by agreeing to the contingent fee without first researching alternative counsel and fee arrangements.

Before the Court are sixteen motions.  The parties have filed cross-motions for summary judgment and numerous motions to strike the testimony and reports of each others' expert witnesses.  Sullivan Ward also moved to strike Plaintiffs' jury demand.  For the reasons stated below, the Court will deny all of the motions to strike and all cross-motions for summary judgment, and will grant Sullivan Ward's motion to strike the jury demand.  The Court will schedule a bench trial forthwith.

## BACKGROUND

The genesis of this action is a professional malpractice claim brought by the Fund against Watson Wyatt, an actuarial consulting firm hired primarily to provide advice, analysis, and recommendations concerning the structure and costs of the Fund's benefits.  The Fund is an employee pension fund for members of the Iron Workers Local No. 25

---

[2] The Court later dismissed additional claims against Sullivan Ward for breach of contract and breach of common law fiduciary duty.  *See* Order of Nov. 4, 2009 (docket no. 322).

Union, which, at the time of the lawsuit, received contributions from approximately 400 employers under collective bargaining agreements.  Contributions were remitted on a monthly basis and then invested and used to pay benefits to the Fund's beneficiaries.  The Fund hired Watson Wyatt specifically "for the purpose of procuring professional expertise and advice in evaluating the Fund's assets and liabilities, complying with statutory funding standards, and meeting certain ERISA filing requirements."  Watson Wyatt compl. ¶ 13.

In fulfillment of its obligations to the Fund, Watson Wyatt prepared annual reports purporting to value accurately the Fund's assets and liabilities, based on reasonably prudent actuarial assumptions, methods, and the Fund's past experience.  *Id.* ¶¶ 19-20. Prior to 2002, Watson Wyatt advised that the Fund's continuing contributions from employers were sufficient to cover the Fund's liabilities.  *Id.* ¶ 21.  The Fund then used that advice to determine whether, or by how much, to increase contributions required from employers, and to make other important decisions regarding the Fund.  *Id.* ¶ 24.

The advice was allegedly deficient.[3]  Watson Wyatt advised that the Fund could maintain and, at times, increase benefits to members and still meet its goals for financial stability.  Watson Wyatt apparently was wrong.  Contrary to the advice provided, the Fund was actually *underfunded* and would be unable to meet its obligations.  *Id.* ¶ 25.

Sullivan Ward was general counsel for the Fund at the time of Watson Wyatt's alleged misfeasance.  On the Fund's behalf, Sullivan Ward filed a lawsuit against Watson Wyatt on July 6, 2004[4] alleging negligence, fraud, and breach of contract all stemming from Watson Wyatt's errors in providing actuarial services and then concealing those errors.

---

[3] Since the case settled before trial, there was no determination of liability.

[4] The action was originally filed in April 2004 but was dismissed without prejudice shortly thereafter for lack of subject-matter jurisdiction.  *Iron Workers' Local No. 25 Pension Fund v. Watson Wyatt & Company*, No. 04-cv-40109 (E.D. Mich. filed Apr. 14, 2004)).

Almost two and a half years after suit was filed, one month after a hearing on Watson Wyatt's motion for partial summary judgment (a motion which, if granted, would have limited the Fund's damages considerably), and three months before trial, the parties settled. *See* Mot. Enforce Settlement Agreement, 1 (docket no. 135). After a hearing on Sullivan Ward's later motion to enforce the settlement, the Court entered an order dismissing the entire action without prejudice and ordering Watson Wyatt to tender full payment before April 20, 2007, or the case would be reinstated and a hearing held the same day.

Four days prior to the deadline for payment, Young, represented by counsel, filed a motion to intervene solely for the purpose of challenging the contingent fee award on grounds of excessiveness and conflict of interest. Young did not object to settlement of the underlying action against Watson Wyatt, but simply asked that the $36 million contingency fee be set aside.

The Court held a hearing on Young's motion on April 18, 2007. Two days later, it entered a stipulated order dismissing the claims against Watson Wyatt with prejudice and ordering that the contingency fee be placed in a separate account held by Sullivan Ward while the Court resolved Young's motion to intervene. Nearly a year later, on April 30, 2008, the Court permitted Young to be added as a party in the action solely for the purpose of challenging Sullivan Ward's fee. The Court then denied Young, Weglarz, and Chakur's motion to formally intervene, finding their interests were adequately protected by joining Young as a party.

Meanwhile, on June 1, 2007, shortly after the Court ordered the fee to be held by Sullivan Ward in trust, Young, Weglarz, and Chakur filed a separate action against Sullivan Ward and the Trustees alleging breach of fiduciary duty under ERISA and other various

4

causes of action, all primarily challenging the contingency fee agreement struck between the Fund and Sullivan Ward. *George Henry Young, et al., v. James Hamric, et al.*, No. 07-cv-12368 (E.D. Mich.). The action was consolidated with the underlying action against Watson Wyatt, in which the only remaining issue was the propriety of the contingency agreement and resulting fee. The complaint was amended twice and various of the claims were dismissed with prejudice. The remaining claims involve breach of ERISA fiduciary duty against the Trustees and Sullivan Ward, and violation of ERISA's prohibition on certain transactions.

Discovery has closed and all parties have moved for summary judgment. Plaintiffs have also filed a motion for summary judgment in the underlying action solely on the propriety of the contingency fee arrangement under Michigan law. Along with the summary judgment motions, the parties have also filed numerous motions to strike the testimony and reports of each others' expert witnesses used to support their requests for summary judgment. Sullivan Ward has also moved to strike Plaintiffs' jury demand.

The Court held a hearing on the cross-motions for summary judgment and took the motions under advisement. It advised the parties that it would decide the remaining pending motions without a hearing.

**DISCUSSION**

The Court will address the motions to strike first and the summary judgment motions second. Sullivan Ward's motion to strike Plaintiffs' jury demand is discussed last.

I. <u>Motions to Strike</u>

Collectively, the parties have filed ten motions to strike testimony and reports of each others' witnesses. The testimony and reports are used to support and oppose the summary judgment motions. The motions are addressed separately below.

5

A.  Trustees' and Sullivan Ward's Motions to Strike Reports and Testimony
    of Timothy Parsons and Charles Borgsdorf (docket nos. 377 and 381)

Timothy Parsons and Charles Borgsdorf have offered expert opinions in support of

Plaintiffs' claims.  Trustees and Sullivan Ward both contend (in separate motions) that

Parsons and Borgsdorf are not qualified to offer their expert opinions.

Rule 702 of the Federal Rules of Evidence governs expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of
> fact to understand the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience, training, or education,
> may testify thereto in the form of an opinion or otherwise, if (1) the testimony
> is based upon sufficient facts or data, (2) the testimony is the product of
> reliable principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

"[Rule 702] imposes a special obligation upon a trial judge to 'ensure that any and

all scientific testimony . . . is not only relevant, but reliable.'"  *Kumho Tire Co. v. Carmichael*,

526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589

(1993)).  This basic "gatekeeping" obligation applies to *all* expert testimony, not just

testimony of a scientific nature.  *Id.*

Expert testimony must meet three requirements to be admissible.  First, the witness

must establish his expertise by reference to knowledge, skill, experience, training or

education.  This requirement is treated liberally.  *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th

Cir. 2000).  Second, the witness must testify to scientific, technical or other specialized

knowledge.  *Id.*  A district court's focus here is not on the conclusions of the expert, but

rather on the principles and methodology underlying the testimony to ensure that the

principles and methodology are valid.  *Id.*  Third, the testimony must assist the trier of fact.

*Id.* at 578.  There must be a connection between the principles and methodology used and

the disputed factual issues in the case.  *Id.*

6

1.  Timothy Parsons

Trustees and Sullivan Ward contend that Parsons's report and testimony should be stricken because: 1) he lacks knowledge of the background facts surrounding the fee agreement; 2) he is not qualified to opine on the propriety of the fee agreement governing actuarial malpractice litigation; 3) his opinions are unreliable because a) he misunderstands the basic ERISA concepts at issue here and b) they are based a misinterpretation of ERISA's regulations; 4) his report states only legal conclusions; 5) the probative value of his report and testimony is outweighed by the potential for unfair prejudice, confusion, and waste of time.

The Court disagrees with each contention, and will not exclude Parsons's report or testimony.  First, Parsons does not lack knowledge of the background facts surrounding the fee agreement.  The facts were discussed at length in the depositions of the trustees and Sullivan Ward's attorneys, the transcripts from which Parsons has reviewed.  Parsons has also reviewed documentary evidence relating to the claims in this case and the claims asserted against Watson Wyatt.  This is sufficient to formulate reliable opinions.

Second, Parsons is qualified to opine on the propriety of the fee agreement here. He will provide opinions in the field of ERISA, especially related to the actions of trustees and fund counsel and the use of a service agreements with fund counsel.  Parsons is an attorney who has represented ERISA funds for over 30 years.  He has broad experience advising plan fiduciaries and administrators on issues of fiduciary responsibility, Labor Department investigations, compliance, and service contracts.  He is a member of various pension plan organizations, and has published extensively in the field of ERISA, especially as it relates to the issues of trustee and attorney duties.  His lack of experience specifically regarding actuarial malpractice litigation on behalf of pension funds does not render him

7

unqualified to opine on whether Sullivan Ward and Trustees acted in compliance with established standards of care in this case.

Third, Parsons's opinions are not unreliable.  Trustees and Sullivan Ward contend they are unreliable first because Parsons advocates for a "prudent expert" standard for purposes of defining ERISA's fiduciary duties.  This argument misconstrues Parsons's deposition testimony.  Parsons agrees that the ERISA statute sets the standard of care for ERISA fiduciaries.  Parsons dep. 53-55.  He simply labels the standard as calling for a "prudent expert" (using quotation marks around the phrase in his report) to account for the fact that the statute speaks not in terms of a prudent man generally but rather "a prudent man *acting in a like capacity and familiar with such matters*."  He does not assert that ERISA holds fiduciaries to a standard higher than what is expressly stated in the statute. Moreover, Parsons states that he uses the label simply as a tool for teaching trustee prudence.  *Id.* at 55.  This does not mean he misunderstands the governing standard of care.

Trustees and Sullivan Ward contend that Parsons's opinions are unreliable also because they are based on an admitted misunderstanding of ERISA regulations.  A plan's contract for services with a party in interest or fiduciary is prohibited unless no more than "reasonable compensation" is paid.  29 U.S.C. § 1108(b)(2) and (c)(2).  Under Labor regulations, a service contract is not "reasonable" if it does not permit the plan to terminate, without penalty, on reasonably short notice.  29 C.F.R. § 2550.408b-2(c).  The regulations do not expressly require a contract to describe the plan's right to terminate.  Some courts have recognized that such a right is implied in all fund contracts.  *See, e.g.*, *Bona v. Barasch*, No. 01 Civ. 2289, 2003 WL 21222531 *6 (S.D.N.Y. May 27, 2003).  Parsons testified that in his experience the Department of Labor has a practice of requiring plan

contracts to expressly describe termination rights.  Parsons dep. 113.  He agrees that the regulations do not expressly require this.  *Id.*  Parsons does not misunderstand what the regulations require.

Fourth, Trustees and Sullivan Ward contend that Parsons's report should be excluded because it contains nothing more than legal conclusions.  "An expert opinion on a question of law is inadmissible."  *Chavez v. Carranza*, 559 F.3d 486, 498 (6th Cir. 2009).  But an expert report is not inadmissible simply because it contains opinions on ultimate issues in the case.  Fed. R. Evid. 704(a).  In *Chavez*, the court precluded an expert from testifying about whether a foreign's country's law prohibits U.S. courts from exercising jurisdiction over the claims at issue in the case.  The question was a legal one which was inappropriate for presenting to a jury.  559 F.3d at 498.

The Court does not agree that Parsons's report contains "nothing more than legal conclusions."  While his report and testimony contain opinions on ultimate issues, they also include testimony on subsidiary issues such as the types of legal arrangements generally entered into by ERISA plans, the roles played by both trustees and fund counsel in ERISA plans, negotiations between plans and potential outside service providers, whether the legal arrangement at issue was reasonable, and whether Trustees met the standard of care.  Testimony on these issues will assist the trier of fact in reaching ultimate conclusions in this case.  *See In re Reliant Energy ERISA Litig.*, No. H-02-2051, 2005 WL 5989791, *2 (S.D. Tex. Aug. 19, 2005) ("The experts' opinions on specific issues, such as whether Defendants were ERISA fiduciaries for certain relevant purposes, could also prove helpful to the Court as the trier of fact if they are supported by the evidence and the relevant legal authorities, *see* Fed. R. Civ. P. 702, and are not inadmissible simply because they address ultimate issues of fact.").

Finally, the probative value of Parsons's report and testimony does not appear to be substantially outweighed by their potential for prejudice, confusion, and waste of time.  Fed. R. Evid. 403.  Trustee's and Sullivan Ward's arguments under Rule 403 are simply a repackaging of their earlier arguments, which the Court finds unpersuasive.

The Court will not strike the reports or testimony of Timothy Parsons.

2.  <u>Charles Borgsdorf</u>

Plaintiffs also submit expert testimony from Charles Borgsdorf, which Trustees and Sullivan Ward seek to exclude on grounds substantially similar to the grounds raised with respect to Parsons above.  Borgsdorf has offered opinions on the reasonableness of the contingency agreement and resulting fee, among other issues.  He admits he is not an expert in the field of ERISA.

Trustees and Sullivan Ward contend that Borgsdorf's testimony and report are unreliable because he opines on matters outside his area of professional expertise when he discusses ERISA.  The Court disagrees.  As Sullivan Ward expressly contends in its motion for summary judgment, whether the fee award is reasonable under ERISA depends in large part on whether it complies with Michigan's rules regarding attorney fees, Mich. R. Prof'l Conduct 1.5(a).  Therefore, Borgsdorf's testimony is reliable insofar as he discusses reasonableness of the fee under Rule 1.5(a), an area in which he has expert knowledge. To the extent Borgsdorf offers testimony related to fiduciary duties under Michigan's common law, however, his testimony is irrelevant since all such claims have been dismissed.

Trustees and Sullivan Ward next contend that Borgsdorf lacks knowledge of the background facts surrounding the fee agreement, rendering his testimony and report excludable.  As with Parsons, Borgsdorf has reviewed the depositions of all of the trustees

10

involved in hiring Sullivan Ward as litigation counsel and the negotiation of the fee agreement. He has also reviewed the pleadings in the case and numerous other documents produced in discovery. And as with Parsons, his lack of familiarity with actuarial malpractice claims does not render him unqualified. He has sufficient familiarity with the facts to offer relevant and helpful testimony.

Trustees and Sullivan Ward contend next that Borgsdorf's report and testimony contain only legal conclusions. The Court disagrees. The paragraph specifically cited in support of this challenge (¶ 30) is located in the section entitled "Conclusion." Earlier portions of the report, however, contain opinions on subsidiary issues related to reasonableness of the fee that will assist the trier of fact.

Finally, the Court does not find the probative value of the report to be substantially outweighed by its potential for prejudice, confusion, or waste of time.

The Court will not strike the report or testimony of Charles Borgsdorf.

B.  Trustees' Motion to Strike Affidavit of Timothy Parsons (docket no. 393)

In response to Trustees' motion for summary judgment, Plaintiffs submitted an affidavit from Parsons. The affidavit contains opinions substantially similar to those provided in Parsons's deposition testimony and expert report. Trustees move the Court to strike the affidavit because: 1) it was not timely disclosed; 2) it contradicts earlier testimony and his report; 3) it is unreliable. The Court disagrees with each contention.

First, it is true that the affidavit was created after Parsons's deposition and submitted in response to Trustees' summary judgment motion. Were the affidavit a "rebuttal expert report," as Trustees contend, the affidavit would be untimely and therefore excludable

11

under Rule 37(c)(1).[5]   But the affidavit is not a rebuttal expert report.   It is simply a reiteration of the opinions expressed in Parsons's report and deposition.   The Trustees have from the beginning been aware of the opinions Parsons would offer.   While the affidavit at times clarifies Parsons's deposition testimony regarding the governing prudence standard and Labor regulations concerning termination rights for service contracts, it does not contradict that testimony.   *See Aeral, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006) (noting that post-deposition affidavit that does not "directly contradict" deposition testimony must be considered on summary judgment unless court determines affidavit constitutes attempt to create a sham fact issue).   Parsons's opinions in his affidavit are consistent with the opinions he expressed in his report and deposition.   Therefore, there is no reason to strike them.   Finally, Parsons's affidavit does not render him unqualified to testify as an expert.   Trustees' assertion to the contrary is a reiteration of their earlier argument that Parsons is not qualified to testify, an argument the Court rejected.

The Court will not strike Parsons's affidavit.

C.  Sullivan Ward's Motion to Strike Various
     Affidavits Submitted by Plaintiffs (docket no. 395)

Sullivan Ward has moved to strike the affidavits of Timothy Parsons, Charles Borgsdorf, Bart Carrigan, and George Young.   The grounds asserted with respect to Parsons's affidavit are the same asserted by Trustees in their motion, and will be denied for the reasons stated immediately above.

Sullivan Ward raises the same arguments with respect to Borgsdorf's affidavit. Sullivan Ward contends that Borgsdorf's affidavit was an untimely-disclosed rebuttal report and contradicts his initial report and testimony.   The Court disagrees.   As with Parsons's

---

[5] All expert rebuttal reports were to be exchanged by October 30, 2009.   *See* Scheduling Order (docket no. 315).

affidavit, Borgsdorf's affidavit contains the same opinions offered in his report and testimony.  There is no direct contradiction.  It is true that Borgsdorf's report does not include elaborate discussion of the factors under Rule 1.5(a) of the Michigan Rules of Professional Conduct.  The report does, however, contain an opinion that the contingency fee was excessive under Rule 1.5.  Sullivan Ward never questioned Borgsdorf about these factors at his deposition.  His affidavit includes a discussion of each factor, but the discussion contradicts nothing he said in his deposition.  It was permissible for Plaintiffs to obtain a supplemental affidavit regarding Borgsdorf's view on the individual factors for purposes of opposing Sullivan Ward's motion for summary judgment.  *See Aerel*, 448 F.3d at 908.  Nothing prevented Sullivan Ward from asking Borgsdorf to opine on how these individual factors applied in this case.  And if Sullivan Ward thought the eight factors were at the heart of the claims against it, it should have asked about them in Borgsdorf's deposition.

Sullivan Ward next contends that the affidavits from both Carrigan and Young should be excluded because they offer impermissible opinions.  Testimony in the form of an opinion is permissible so long as it is 1) rationally based on the perception of the witness, 2) helpful to a clear understanding of the witness' testimony, and 3) is not based on technical knowledge within the scope of Rule 702.  Fed. R. Evid. 701.  Carrigan's affidavit meets these requirements.  He was a Fund trustee from September 2005 to June 2007, was present for all board meetings during that time, and has personal knowledge of the events he describes in his affidavit.  Carrigan Aff. ¶ 4.  He states that during his tenure as trustee, he witnessed a large amount of influence and control exerted by Anthony and Michael Asher.  *Id.* ¶ 5.  His opinions are rationally based on his perceptions during meetings.  They are not impermissible.

13

Young's affidavit is challenged for the same reason.  Young was a Fund trustee from June 2006 to June 2009 and attended all board meetings during that time.  Young Aff. ¶ 2.  He too observed what he considers to be a large amount of influence over the trustees by Anthony and Michael Asher.  *Id.* ¶ 3.  His opinions are based on facts which he describes in subsequent paragraphs of his affidavit.  They are not impermissible.

The Court will not strike the affidavits of Parsons, Borgsdorf, Carrigan, or Young.

D.  <u>Plaintiffs' Motion to Strike Testimony of Leonard Garofolo (docket no. 397)</u>

Leonard Garofolo is a former San Francisco Regional Director of the U.S. Department of Labor's Pension and Welfare Benefits Administration, now known as the Employee Benefits Security Administration.  In that capacity, he was responsible for enforcing portions of ERISA on the West Coast.  He is the founder and principal of ERISA Consulting Group and has provided consulting services to attorneys in many legal actions brought under ERISA.  He has served as an independent fiduciary and consultant for employee benefit plans.  Trustees offer Garofolo's testimony in support of their defense in this case.  Plaintiffs seek to exclude the testimony on various grounds, all of which lack merit.

Plaintiffs claim first that Garofolo's testimony should be excluded because he is engaging in the unauthorized practice of law by providing an opinion on the matters in this case.  Not so.  The applicable laws barring the unlawful practice of law contemplate advice-giving, not simply opining on the law or its application to a given set of circumstances.  Garofolo is not providing legal advice simply by testifying or providing an expert report.

Plaintiffs claim next that Garofolo is not qualified to offer opinions in this case because he is not a lawyer, has never acted as a trustee to a pension fund, and has never hired attorneys for litigation involving a pension fund.  Garofolo is eminently qualified to

provide expert testimony based on his vast experience with ERISA plans.  His lack of both a law degree and experience as a trustee do not render him unqualified to offer opinions in this case.

Plaintiffs claim next that Garofolo's opinions are unreliable because they lack a factual basis.  This argument lacks a factual basis.  Garofolo has reviewed the deposition testimony from the witnesses in this case, as well as numerous documents and deposition testimony generated in the underlying action against Watson Wyatt.  That is sufficient.

Finally, Plaintiffs claim that Garofolo's report contains nothing but legal conclusions. Plaintiffs have misread his report.  While the report does contain opinions on ultimate issues in the conclusion paragraph, the remainder of the report contains a discussion of subsidiary issues that will assist the trier of fact in reaching a conclusion.

The Court will not strike Garofolo's report or testimony.

E.  Plaintiffs' Motion to Strike Testimony of Owen Rumelt (docket no. 398)

Owen Rumelt is an attorney whose expert opinion is offered by Sullivan Ward in support of their contention that they are not ERISA fiduciaries.  Plaintiffs move to strike Rumelt's testimony and report on the basis that he is not qualified to offer expert  testimony in this case.  They offer three reasons, all of which lack merit.

Plaintiffs contend first that Rumelt is unqualified because he lacks the knowledge to determine whether and when fund counsel can be a fiduciary for purposes of ERISA. Prior to being hired by Sullivan Ward, Rumelt apparently had never researched the question, and, once hired, delegated the legal research on the question to an associate in his law firm.  This lack of experience, Plaintiffs contend, is dispositive to his qualifications to testify.  The Court disagrees.  Rumelt has served as fund counsel to various ERISA plans for over 20 years.  His experience includes litigating professional malpractice and

15

fiduciary breach actions on behalf of fund trustees.  He has lectured for the International Foundation of Employee Benefit Plans' Certified Employee Benefits Specialist program. Rumelt offers opinions regarding the routine functions of fund counsel generally and whether Sullivan Ward went beyond those functions here.  His opinions are directly relevant to Plaintiffs' claims against Sullivan Ward and may assist the trier of fact in resolving them. The fact that Rumelt never previously researched whether fund counsel could be an ERISA fiduciary does not change his knowledge of the routine functions generally performed by fund counsel, testimony which will assist the fact-finder determine whether Sullivan Ward was an ERISA fiduciary here.  *See* 29 C.F.R. § 2509.75-5(D-1) (indicating that attorneys performing usual "professional functions" ordinarily are not fiduciaries under ERISA).

Plaintiffs next contend that Rumelt's testimony is unreliable because the facts on which they rely contradict the evidence in this case.  The Court disagrees.  Rumelt's testimony regarding his experience as fund counsel is independent of the facts in this case and therefore cannot contradict them.  Also, his opinion that Sullivan Ward was not a fiduciary to the Fund in this case is sufficiently based on the facts of this case.  Rumelt has reviewed the deposition exhibits, Plaintiffs' second amended complaint, and other relevant documents supplied by Sullivan Ward.  Contrary to Plaintiffs' assertions, Rumelt has not ignored dispositive facts in reaching his conclusion on fiduciary status.  He reviewed the lengthy second amended complaint and concluded that the allegations failed to demonstrate that Sullivan Ward was a fiduciary.  That conclusion is ultimately for the fact-finder to make, but Rumelt will not be precluded from offering his opinion on the issue at trial.

Plaintiffs finally contend that Rumelt's conclusions are unreliable because they circumvent the Court's earlier ruling that attorneys can be fiduciaries and that the

16

allegations in the complaint regarding Sullivan Ward's conduct did not foreclose a finding of fiduciary status. In its earlier order, the Court merely restated the statute and the regulations defining and clarifying, respectively, when a service provider can be a fiduciary. The Court held that whether Sullivan Ward had exercised the level of control over the Fund's assets necessary to render it a fiduciary was a question of fact to be determined at trial, but that Plaintiffs had carried their burden to state a plausible claim of fiduciary status. That holding is by no means a conclusive finding that Sullivan Ward was an ERISA fiduciary. Rumelt has not circumvented the Court's order by opining that Sullivan Ward was not a fiduciary.

Finally, Plaintiffs contend that Rumelt's testimony should be excluded because he reaches legal conclusions. While Rumelt concludes that Sullivan Ward was not a fiduciary for purposes of ERISA, the Federal Rules of Evidence do not require exclusion of his testimony. *See* Fed. R. Evid. 704(a).

The Court will not strike Rumelt's report or testimony.

F. Plaintiffs' Motion to Strike Testimony of Lawrence Fox (docket no. 400)

Lawrence Fox is an attorney whose opinions regarding the legal services agreement between the Fund and Sullivan Ward and the contingency fee generated by the settlement are being offered in Sullivan Ward's defense. Plaintiffs challenge the admissibility of Fox's testimony on grounds that it is unreliable. None of the reasons cited by Plaintiffs supports excluding Fox's testimony. Fox has extensive experience in the field of legal ethics, including fee arrangements. He is specifically familiar with contingency fee agreements. He has published and lectured on the subject, has hired attorneys on a contingency basis in his capacity as trustee to various companies, and he contributed to ABA Formal Opinion 94-389, which represents the ABA's official opinion on continent fee arrangements. In sum,

17

Fox is qualified to testify as an expert in this case.

The Court will not exclude Fox's report or testimony.

G. Plaintiffs' Motion to Strike Testimony of George Googasian (docket no. 401)

George Googasian is an attorney whose opinions regarding the reasonableness of the contingency fee are being offered in Sullivan Ward's defense. Plaintiffs challenge the admissibility of Googasian's testimony on grounds that it is unreliable. None of the reasons cited by Plaintiffs supports exclusion. Plaintiffs contend primarily that Googasian's testimony is unreliable because he fails to account for the overlay that ERISA places on the determination of whether the continency fee was reasonable. An important question with respect to the claims against Sullivan Ward is whether the attorney fee charged to represent the Fund in the action against Watson Wyatt was reasonable under the circumstances. Googasian's 50-years experience as an attorney, negotiating fee arrangements including contingency agreements, qualify him to provide an opinion in this case. His lack of experience in ERISA matters does not render him unqualified. Plaintiffs' additional arguments for exclusion are similarly unpersuasive.

The Court will not exclude Googasian's report or testimony.

H. Plaintiffs' Motion to Strike Testimony of Marcia Proctor (docket no. 402)

Marcia Proctor is an attorney whose opinions on ethical issues in the legal profession are being offered in support of Sullivan Ward's defense. Plaintiffs challenge the admissibility of Proctor's opinions on grounds that she is an unreliable witness. None of the reasons Plaintiffs put forth supports excluding Proctor's testimony. Plaintiffs' primarily contend, as they did with respect to the testimony of Fox and Googasian, that Proctor has failed to consider that the fee agreement here involved an pension fund governed by ERISA, not Michigan law. Again, whether the fee agreement was a prohibited transaction

18

under ERISA will depend on whether it is reasonable under the circumstances. Proctor has experience with legal fee arrangements, having served for the last thirteen years as general counsel to Buztel Long, a prominent Detroit law firm, where she concentrated on professional responsibility matters and attorney compliance. She has also served as general counsel for the State Bar of Michigan, having been hired expressly for her expertise in professional responsibility matters. Proctor has reviewed the facts of this case and has formed opinions. Her testimony will be relevant to the issues in this case and helpful to the trier of fact. Plaintiffs' remaining grounds for exclusion are similarly unpersuasive.

The Court will not exclude Proctor's report or testimony.

I.   Plaintiffs' Motion to Strike Sullivan Ward's Exhibits
     Submitted in Support of Summary Judgment (docket no. 405)

In support of their motion for summary judgment, Sullivan Ward submitted Rule 26(a)(2) expert reports from each of their experts. The reports are not sworn and were not created under oath. Plaintiffs pointed this out in their response brief. Sullivan Ward attached to their reply brief affidavits from each expert in an attempt to rectify the problem. The two-page affidavits by each expert witness state that the witness has personal knowledge of the contents of their report, and purports to incorporate the contents of the report into the affidavit. Plaintiffs move to strike the reports on the grounds that they constitute hearsay and may not be considered on summary judgment. Plaintiffs also move to strike an exhibit submitted for the first time in Sullivan Ward's reply brief. The Court will strike no document.

In response to Plaintiffs' evidentiary objection, Sullivan Ward contends that its experts' reports are admissible because Rule 26(a)(2) requires only that expert reports be

signed, not sworn.  Rule 26(a)(2), however, governs expert report disclosures.  Rule 56 governs summary judgment, and requires that the reports be in the form of an affidavit or declaration.  *See Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 488 (6th Cir. 2008); Fed. R. Civ. P. 56(c)(4).  As initially submitted, the reports are hearsay and the Court cannot consider them.

The affidavits affirming the contents of each expert's report, however, cure any technical deficiencies associated with the submission of the original, unsworn reports.  *See, e.g.*, *Gordon v. Caruso*, No. 1:06-cv-571, 2010 WL 882855, *2 (W.D. Mich. Mar. 9, 2010) (permitting moving party to supplement summary judgment motion with affidavit from expert witness that "affirms the contents of the expert report"); *see also Harnden v. Jayco, Inc.*, 496 F.3d 579, 583 (6th Cir. 2007) (noting possibility of remanding matter for the submission of sworn expert report, but declining to do so finding consideration of unsworn report on summary judgment was harmless error).  And because Plaintiffs were aware of the contents of the reports well before dispositive motion practice began, Plaintiffs are not prejudiced if the Court considers the reports.

Sullivan Ward also attached to its reply brief a fee agreement between it and another pension fund.  Plaintiffs ask the Court to strike the exhibit since it was submitted for the first time in a reply brief, which prevented them from responding to it.  Plaintiffs were aware of the agreement before Sullivan Ward attached it to its reply brief, having originally obtained it through a third-party subpoena.  Accordingly, it is not "new evidence" that caused any surprise.  Moreover, the exhibit was offered in Sullivan Ward's reply brief as a *response* to Plaintiffs' argument that the reasonableness of the contingency fee agreement must be judged by reference to agreements entered into by funds and service providers for similar services, not simply by other litigants and attorneys generally.  Thus, Sullivan Ward

20

responded properly by including the exhibit.

II.  Cross-Motions for Summary Judgment

All parties have moved for summary judgment on all claims, hoping to resolve this matter without a trial.  "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Schreiber v. Moe*, 596 F.3d 323, 329 (6th Cir. 2010) (citation and internal quotation marks omitted).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  For a dispute to be "genuine," the evidence must be sufficient to allow a reasonable jury to return a verdict for the non-moving party should the dispute be resolved in its favor.  *Id.* at 248.  The ultimate inquiry is "whether  the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "In considering a motion for summary judgment, the judge's function is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and not to judge the evidence and make findings of fact." *Bultema v. United States*, 359 F.3d 379, 382 (6th Cir. 2004)  (alterations, citation, and internal quotation marks omitted).

The fact that the parties have filed cross-motions for summary judgment does not necessarily mean that there are no facts in dispute and that summary judgment for one side or there other is necessarily appropriate.  *See Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003); *see also Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th

Cir. 1991) ("The filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." (citation omitted)).  "On cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'"  *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001) (quoting *Taft Broad.*, 929 F.2d at 248).  Even if there is no dispute as to many of the facts, it may still be possible to draw competing inferences and conclusions from the facts, in which case summary judgment is inappropriate.  *Id.* at 593 n.2.

A.  Case No. 04-cv-40243

Young, as a party to the underlying action against Watson Wyatt, has filed a motion for summary judgment in that action on the sole issue of the propriety of the legal services agreement.  He contends that the fee arrangement is void or unenforceable because it lacks consideration and because Sullivan Ward breached various ethical obligations in obtaining it.  Neither Sullivan Ward nor the Trustees filed cross-motions on this issue.

It was originally contemplated by the parties that the Court would conduct an evidentiary hearing at which the parties could offer testimony, documentary evidence, and argument, all in support of their respective positions regarding the propriety of the contingency fee.  *See* Mot. Hr'g Tr. 42-43, Apr. 18, 2007 (docket no. 148).  For reasons presently unknown to the Court, the hearing never occurred.[6]  Sullivan Ward filed a motion to expedite a hearing but the motion was terminated as moot by the Court in a minute entry

---

[6] On October 9, 2008, the matter was reassigned from District Judge Paul V. Gadola to the undersigned.  *See* Notice of Reassignment (docket no. 209).

on September 24, 2007.

Courts have broad authority in dealing with an allegedly excessive contingency fee. *See Green v. Nevers*, 111 F.3d 1295, 1302 (6th Cir. 1997). This authority is generally exercised through a court's review of the fee in a post-judgment or post-settlement hearing. Indeed, such a proceeding was precisely what was contemplated by the parties in the beginning. Young, Weglarz, and Chakur later apparently concluded that such a proceeding would not fully protect their interests and decided to challenge the fee through a wholly new lawsuit.

In light of the filing of the second action, and given that the claims alleged in that action are substantially similar to the arguments raised in Young's motion for summary judgment on the reasonableness of the fee, the Court will deny Young's motion for summary judgment in the original action. There is no longer any need for a separate review within the confines of the original action. The purpose of permitting Young to join the underlying action was to provide him a procedural vehicle for challenging the fee. He now has that vehicle by way of a second, free-standing action.[7] Given the filing of the second action, the Court sees no reason to permit argument and presentation of evidence regarding the contingency fee in the context of the original action. Any relief to which Plaintiffs may be entitled shall lie solely in the second action. Their rights are fully protected therein.

Therefore, the Court will deny Plaintiffs' motion for summary judgment on the propriety of the fee agreement.

---

[7] It appears that Young and his counsel eventually followed the proposal offered by Morley Witus, counsel for Watson Wyatt, at the April 18, 2007 hearing before Judge Gadola. *See* Mot. Hr'g Tr. 44-45. Witus recommended that the action be dismissed with prejudice and that Young file a brand new action challenging the fee. Watson Wyatt was dismissed with prejudice as a party, but the action continued nevertheless.

B. Case No. 07-cv-12368

The second action involves claims under ERISA exclusively.  Four cross-motions have been filed, one each by Sullivan Ward and Trustees, and two by Plaintiffs on their claims against each set of defendants.  Review of the briefing and the extensive record evidence submitted along with it readily demonstrates that there are genuine issues of material fact preventing the Court from resolving this case through summary judgment. The parties have viewed the facts and all reasonable inferences drawn therefrom in the light most favorable to themselves, thereby failing to carry their burden to demonstrate the absence of a genuine dispute as to the material facts.

While many of the underlying facts in this case may be undisputed, there is considerable dispute over the inferences and ultimate conclusions that should be drawn from them.  *See, e.g.*, *Taft Broad.*, 292 F.2d at 247-48 ("Both parties, as movants, rely on inferences favorable to their own positions in seeking to obtain summary judgment, but as noted the law provides that reasonable inferences must be drawn in favor of the nonmovant in the context of a summary judgment."); *see also* 10A Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2725, 433-36 (3d ed. 1998) ("Therefore, if the evidence presented on the motion is subject to conflicting interpretations, or reasonable people might differ as to its significance, summary judgment is improper.").

Most importantly, the nature of the ultimate inquiry in this case – whether the legal services arrangement and resulting fee was reasonable – makes resolution of the issue on summary judgment not possible.  Based on the record evidence – and depending on the way the finder of fact resolves conflicting testimony and inferences from the evidence presented – the result in this case could easily go in favor of either side.  Evidence and

24

argument presented by Plaintiffs could support a finding that the fee arrangement was not reasonable, thereby subjecting both Trustees and Sullivan Ward to liability under ERISA. On the other hand, the evidence could also support a conclusion that the arrangement was reasonable under the circumstances, thereby defeating all liability.  The parties' experts have reached contrary conclusions on the issue.  It is certainly possible for the finder of fact to return either of those verdicts if supported by the evidence.  The Court cannot say that, as a matter of law, the fee is reasonable or unreasonable.  The resolution of this question of reasonableness is at the heart of every claim in the action, and therefore, summary judgment is not warranted on any claim.

Little utility would be served in discussing in detail here each and every issue of fact and possible inference to be resolved by the fact-finder.  Suffice it to say that no party has carried its burden of demonstrating the absence of genuine issues of material fact.  The parties' cross-motions for summary judgment must be denied.

III.  <u>Sullivan Ward's Motion to Strike Plaintiffs' Jury Demand (docket no. 331)</u>

Finally, Sullivan Ward has moved to strike Plaintiffs' jury demand.  Plaintiffs' original complaint contained claims for breach of contract, malpractice and common law breach of fiduciary duty, but these claims were later dismissed.  The remaining claims involve ERISA exclusively.  Because ERISA itself does not expressly permit jury trials and because the claims and relief Plaintiffs seek are solely equitable in nature, Plaintiffs are not entitled to a jury trial.  The Court will grant Sullivan Ward's motion to strike Plaintiffs' jury demand.

Trial by jury is permitted if a right to one exists either by statute or by the Seventh Amendment.  "The answer to the first question is clear: ERISA does not statutorily provide for trial by jury, either expressly or implicitly."  *Lamberty v. Premier Millwork and Lumber Co., Inc.*, 329 F. Supp. 2d 737, 744 (E.D. Va. 2004) (citing *Berry v. Ciba-Geigy Corp.*, 761

F.2d 1003, 1007 (4th Cir. 1985) and *Biggers v. Wittek Indus.*, 4 F.3d 291, 297-98 (4th Cir. 1993)); *accord In re Vorpahl*, 695 F.2d 318, 321 (8th Cir. 1982); *Ellis v. Rycenga Homes, Inc.*, No. 1:04-cv-694, 2007 WL 1032367, *1 (W.D. Mich. Apr. 2, 2007). Moreover, "the Sixth Circuit has long held that no right to a jury trial attaches to a beneficiary's claim for benefits under an ERISA plan, a result that could not be reached if the statute itself conferred the right to a jury trial." *Ellis*, 2007 WL 1032367, at * 1 (citing *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998), *Bittinger v. Tecumseh Prod. Co.*, 123 F.3d 877, 882-83 (6th Cir.1997), and *Bair v. Gen. Motors Corp.*, 895 F.2d 1094, 1096 (6th Cir. 1990)). Therefore, for a right to trial by jury to attach in this case, it must do so by virtue of the Seventh Amendment.

The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. The right extends to all suits adjudicating *legal* rights. *Chauffers, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990). Where only equitable rights are ascertained and determined, however, no right to a jury trial exists. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989). To determine whether a right exists in a given case, a court first determines how the action compares with 18th-century actions brought in the courts of England prior to the merger of courts of law and equity. Second, the court examines the remedy sought and determines whether it is legal or equitable in nature. The second step is more important than the first. *Id.* at 42.

The first step is straightforward, and suggests that no right to a jury trial exists here. "ERISA law is closely analogous to the law of trusts, an area within the exclusive jurisdiction of the courts of equity." *Borst v. Chevron Corp.*, 36 F.3d 1308, 1324 (5th Cir. 1994) (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989)); *see also*

26

*Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 848-49 (6th Cir. 2006) ("[I]n colonial times, the English High Court of Chancery had exclusive jurisdiction over trusts." (citation omitted)).  Plaintiffs focus primarily on their claims under 29 U.S.C. §§ 1132(a)(2) and 1109 for breach of fiduciary duty, which statutory provisions Plaintiffs assert permit traditionally *legal* relief.[8]  But claims for breach of fiduciary duty too were within the exclusive province of the equity courts, even though it was possible to obtain an award of money in such actions.  *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) ("[A]t common law, the courts of equity had exclusive jurisdiction over virtually all actions by beneficiaries for breach of trust.  It is also true that money damages were available in those courts against the trustee." (footnote and internal citations omitted)).  Therefore, the first step in the analysis suggests no right to a jury trial exists here.

The second step confirms that no right exists here.  Specifically, the nature of the relief Plaintiffs seek against both sets of defendants here is equitable, not legal.  Plaintiffs seek a determination that the contingency fee agreement between Sullivan Ward and the Fund was prohibited under ERISA § 406, 29 U.S.C. § 1106, and return of that portion of the fee which they deem excessive, currently being held in trust by Sullivan Ward.  Plaintiffs also seek injunctive relief prohibiting Trustees and Sullivan Ward from continuing to serve as trustees and fund counsel, respectively.  Such relief clearly is equitable and Plaintiffs do not argue otherwise.

Instead, as noted above, Plaintiffs focus on their claims against Sullivan Ward and Trustees for breach of fiduciary duty under 29 U.S.C. §§ 1132(a)(2) and 1109, arguing that these statutory provisions allow for money damages and thereby preserve a right to a jury

---

[8] Plaintiffs do not contend that they are entitled to a jury trial on their prohibited transaction claims under 29 U.S.C. § 1106.

trial here.  Plaintiffs' request for relief is not legal simply because they label  the request as one for money damages, traditionally a form of legal relief.  "[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings."  *See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477-78 (1962).  Looking beyond labels then, the Court finds that Plaintiffs' request for damages is restitutionary and therefore sounds in equity.  *See Crews*, 788 F.2d at 338 ("Historically, an action for restitution seeks an equitable remedy for which there is no Seventh Amendment right to a jury trial."); *see also Terry*, 494 U.S. at 570-71 (noting an exception to the general rule that a request for damages is by nature legal, where the request sounds in restitution).  Using a claim for breach of fiduciary duty as one vehicle, Plaintiffs seek the return of the $36 million contingency fee to which Sullivan Ward was entitled under its agreement with the Fund.  As against Sullivan Ward, such relief is quintessentially restitutionary and therefore equitable in nature.  *See also Vargas v. Child Dev. Council of Franklin County, Inc.*, 269 F. Supp. 2d 954, 957 (S.D. Ohio 2003) ("[I]t is also well settled that there is no right to a jury trial on ERISA claims for recovery of benefits or breach of fiduciary duty." (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 406 (6th Cir.1998) (en banc)).

The Supreme Court's decision in *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), does not change matters.  Though *Great-West* did not involve the Seventh Amendment, some courts have read broadly the Court's discussion there of restitution, and have essentially concluded that a remedy is "legal," for purposes of the Seventh Amendment, anytime a plaintiff seeks damages rather than return of specific money or property in the defendant's possession.  *See, e.g.*, *Pereira v. Farace*, 413 F.3d 330 (2d Cir. 2005) (not an ERISA case); *Bona v. Barasch*, No. 01 Civ. 2289, 2003 WL 1395932 (S.D.N.Y. Mar. 20, 2003) (ERISA case).  The Court declines to apply this broad

28

reading of *Great-West* to conclude that Plaintiffs are seeking legal relief simply because they seek damages from Sullivan Ward.  Other courts have similarly declined to read *Great-West* broadly, and the Court finds their discussions persuasive.  *See, e.g.*, *In re YRC Worldwide, Inc. ERISA Litig.*, No. 09-2593, 2010 WL 4920919 (D. Kan. Nov. 29, 2010); *George v. Kraft Foods Global, Inc.*, No. 07 C 1713, 2008 WL 780629 (N.D. Ill. Mar. 20, 2008); *Abbott v. Lockheed Martin Corp.*, No. 06-cv-0701, 2007 WL 2316481, *2 (S.D. Ill. Aug. 13, 2007); *Ellis*, 2007 WL 1032367.  As these courts recognize, *Great-West* did not involve the Seventh Amendment, did not involve 29 U.S.C. 1132(a)(2) (claims for breach of fiduciary duty under § 1109), and did not involve a claim against a trustee or fiduciary who had breached its duties to participants or beneficiaries.  Rather, "in *Great-West*, the Court was considering a claim more akin to a breach of contract action, arising from a contractual duty instead of a fiduciary duty, and the Court unremarkably determined that such a claim was a legal claim, distinguished from equitable claims that ordinarily involved imposition of constructive trusts."  *In re YRC*, 2010 WL 4920919, at *4.  Here, by contrast, there are no contract claims and Plaintiffs are claiming that Sullivan Ward breached its fiduciary duties in violation of § 1109.[9]

Equitable too are Plaintiffs' claims against Trustees for various alleged breaches of their fiduciary duties.  In addition to injunctive relief (clearly equitable in nature), Plaintiffs

---

[9] And even applying *Great-West's* discussion of restitution here does not yield a different result.  The Court recognized that "not all relief falling under the rubric of restitution is available in equity," noting that restitution is available in actions in both equity *and* law. 534 U.S. at 213.  "For restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  *Id.* at 214 (footnote omitted).  Here, Plaintiffs seek to restore to the Fund "particular funds or property," i.e., the allegedly excessive portion of the contingency fee, currently in Sullivan Ward's constructive possession.  This is restitutionary relief of an equitable nature.  Thus, even applying *Great-West's* discussion of restitution to the Seventh Amendment analysis does not lead to the conclusion that Plaintiffs' claims against Sullivan Ward for breach of fiduciary duty are legal in nature.

seek to hold Trustees "responsible [for] mak[ing] good to the Fund all losses to the Fund resulting from" the Trustees' breach of their fiduciary duties to the Fund.  SAC ¶ 306.  In their briefing, they characterize this claim as one for damages for which a jury trial is preserved.  While it may be difficult to characterize this claim as one for restitution, since Plaintiffs do not seek the return of identifiable money or property currently in Trustees' possession, that does not mean Plaintiffs' request is legal in nature.  Damages at law are not obtainable in a claim for breach of fiduciary duty.  *See Termini v. Life Ins. Co. of N. Am.*, 474 F. Supp. 2d 775, 778 (E.D. Va. 2007) ("[Claims for breach of fiduciary duty] are examined under trust law principles and fiduciary standards, which are within the exclusive jurisdiction of equity courts.").  "[T]he traditional rule is that virtually all remedies against a fiduciary are equitable in nature. . . . 'Except as stated in section 198 [of the Restatement (Second) of Trusts[10]], the remedies of the beneficiary against the trustee are exclusively equitable.'"  *Ellis*, 2007 WL 1032367, at *2 (quoting Restatement (Second) of Trusts § 197 (1959)).

Among these exclusively equitable remedies include actions to redress a breach of trust by payment into the trust estate of any loss resulting from the breach of trust.  *Id.*  This type of remedy should not be confused with a legal remedy for money damages.  Such actions are not considered suits at law for the recovery of damages, but rather equitable actions to "surcharge" the trustee for breach of its fiduciary duty.  *Id.*  "A surcharge is an imposition of personal liability on a fiduciary for wilful or negligent misconduct in the administration of his fiduciary duty.  Typically, surcharges are levied when trustees breach

---

[10] The sole exception was that the courts of law could enforce the duty of the trustee to pay money or deliver property "immediately and unconditionally to the beneficiary." Restatement (Second) of Trusts § 198.  That exception is not applicable here since any recovery will go to the Fund itself, not to Plaintiffs personally.

their fiduciary duties.  In rarer instances, surcharges are assessed against individuals who hold positions of trust similar to a trustee."  *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1142 (9th Cir. 2001) (internal citations and quotation marks omitted).  This is precisely what Plaintiffs seek here.  Therefore, any claim for money Plaintiffs make against Trustees for breach of their fiduciary duties is not one at law, but rather one in equity.

In *George v. Kraft Foods Global, Inc.*, a case very similar to this one, the district court struck the plaintiffs' jury demand after concluding that a claim under ERISA for breach of fiduciary duty was equitable.  2008 WL 780629.  Like Plaintiffs here, the plaintiffs in *George* alleged that fiduciaries of an ERISA plan had breached their fiduciary duties by paying service providers excessive and unreasonable fees and expenses.  The plaintiffs sought to have the defendants "restore to the Plan the losses it experienced as a direct result of the Defendants' breaches of fiduciary duty and [to hold the defendant] liable for any other available and appropriate equitable relief."  *Id.* at *1 (alteration in original).  In support of their demand for a jury trial, Plaintiffs claimed that their demand that the defendants "restore to the Plan the losses it experienced" was a request for a legal remedy, for which a jury trial is preserved under the Seventh Amendment.  The court disagreed, relying on established precedent that claims under ERISA – including breach of fiduciary duty claims under 29 U.S.C. §§ 1132(a)(2) and 1109 – permit only equitable relief.  *Id.* at *2.  Seeking to characterize their claim as one for "legal restitution," and relying on *Great West's* discussion of the dichotomy between legal and equitable restitution, the plaintiffs tried to describe their claim as one for legal restitution since there was no money the defendants were currently possessing as a result of the breach – the money had already been paid to the service provider.  *Id.* at *3.  The court disagreed that *Great-West*

fundamentally changed the nature of the remedy sought in a claim for breach of fiduciary duty. *Id.* at *3-5. The court's reasoning is persuasive and is followed here. The Court will grant Sullivan Ward's motion to strike Plaintiffs jury demand.

## CONCLUSION AND ORDER

The Court will deny the motions to strike and cross-motions for summary judgment, and will grant Sullivan Ward's motion to strike Plaintiffs' jury demand. The case will proceed to a bench trial, which the Court will schedule forthwith.

**WHEREFORE**, it is hereby **ORDERED** that the parties' motions to strike (docket nos. 377, 381, 393, 395, 397, 398, 400, 401, 402, & 405) are **DENIED.**

**IT IS FURTHER ORDERED THAT** the parties' cross-motions for summary judgment (docket nos. 352, 361, 370, 373, & 374) are **DENIED.**

**IT IS FURTHER ORDERED THAT** Sullivan Ward's motion to strike Plaintiffs' jury demand (docket no. 331) is **GRANTED.**

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 31, 2011

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 31, 2011, by electronic and/or ordinary mail.

s/Carol Cohron
Case Manager